STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony L. PRINEAS, Defendant-Appellant.†

Court of Appeals

*No. 2007AP1982–CR. Submitted on briefs October 8, 2008.
—Decided February 4, 2009.*

2009 WI App 28

(Also reported in 766 N.W.2d 206.)

—————————————————————

† Petition to review denied 4/14/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Raymond M. Dall'osto* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Friemuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. SNYDER, J. Anthony L. Prineas appeals from a judgment of conviction on two counts of second-degree sexual assault and from an order denying postconviction relief. He contends that the court erroneously denied his request to substitute counsel prior to trial, allowed inadmissible testimony into evidence during the jury trial, imposed an unduly harsh sentence, and failed to grant postconviction relief for ineffective assistance of trial counsel. We affirm the judgment and order of the circuit court.

## BACKGROUND

¶ 2.   On April 24, 2004, residents of a fraternity house in Whitewater hosted a party. Prineas had once been a member of the fraternity. Keri C. and three friends attended the party that night. Keri drank several alcoholic beverages while at the party and at some point she encountered Prineas. Prineas, who was also drinking that night, does not dispute that he had sexual intercourse with Keri during the party; rather, he disputes the number and variation of sexual acts that occurred and whether the acts were consensual.

¶ 3.   Keri went to the police the next day, Sunday, April 25. She reported that she was assaulted by Prineas and provided them with the bra that she had worn to the party. After meeting with the police, Keri went to the hospital for a sexual assault examination. The State subsequently charged Prineas with six counts of second-degree sexual assault, including four counts arising from penis to vagina penetration, one count arising from penis to anus penetration, and one count arising from ejaculation on the victim.

¶ 4.   Prineas hired an attorney to represent him. On October 25, 2004, approximately one week before the trial date, Prineas filed a motion asking the court's permission for his attorney to withdraw, to substitute counsel, and for a continuance of the trial date. Prineas had consulted a different attorney and paid a retainer to that attorney conditioned on the substitution of counsel and postponement of the trial. The court held a hearing on the motion two days later. The State advised the court that Keri and her family did not want the trial delayed because Keri wanted the case to "be done so she could get on with her life." The court stated that it

would not grant a continuance so close to the trial date unless Prineas or his counsel could "give [the court] some extraordinary reason other than just a simple desire to change [attorneys] at this late date." Because no explanation was offered and because the newly retained attorney could not be ready for the trial as scheduled, the court denied the motion.

¶ 5.   A three-day jury trial took place in November 2004. The State presented testimony from several witnesses, including Patricia Stephan, a registered nurse and a certified sexual assault nurse examiner. Stephan had performed the sexual assault examination on Keri the day after the fraternity party. During her testimony, Stephan described an abrasion on Keri's labia minora and indicated that the abrasion was "consistent with intercourse that occurred by force." Stephan also found bruises on Keri's back and buttocks. She described a bruise on Keri's buttock to be in the shape of a hand print and stated the bruise was consistent with the type seen when someone has been hit. Over objection by Prineas, Stephan was allowed to tell the jury what Keri said during the sexual assault exam. Stephan also testified that, to the best of her knowledge, she had never had a sexual assault complainant give her an inaccurate history during an exam.

¶ 6.   The jury convicted Prineas of two counts of sexual assault and acquitted him of the remaining four. The circuit court sentenced Prineas on February 3, 2005. On the first count, the court imposed a sentence of ten years' initial confinement and ten years' extended supervision. On the second count, the court withheld sentence and ordered a concurrent term of thirty years of probation.

¶ 7.   Prineas moved for postconviction relief, seeking a new trial or, in the alternative, resentencing. He

argued that his trial counsel's performance was deficient and prejudicial, that the circuit court erred when it did not grant an adjournment to accommodate Prineas' new counsel of choice, that the court relied on inappropriate factors at sentencing, and that his sentence was excessive. The circuit court held an evidentiary hearing and ultimately denied the postconviction motion in all respects. Prineas appeals.

## DISCUSSION

¶ 8.    Prineas presents four issues for our review. First, he contends that portions of Stephan's testimony were inadmissible under *State v. Jensen*, 147 Wis. 2d 240, 432 N.W.2d 913 (1988), and *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984). He also argues that the court erred when it denied his motion to substitute counsel prior to trial. Prineas then challenges his sentence on grounds the court improperly considered the charges on which he was acquitted and imposed an unduly harsh and excessive sentence. Finally, he argues that the court erred when it denied his postconviction claim of ineffective assistance of counsel.

*Jensen/Haseltine evidence*

¶ 9.    We begin with Stephan's testimony. Wisconsin law holds that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *Haseltine*, 120 Wis. 2d at 96. An expert may not "convey to the jury his or her own beliefs as to the veracity" of a witness. *Jensen*, 147 Wis. 2d 256–57. Prineas argues that Stephan's testimony that sexual assault complainants had never provided her with an

inaccurate history improperly vouched for Keri's truthfulness. Further, he points to Stephan's testimony that Keri's labial abrasion was consistent with forcible sexual intercourse as impermissible *Jensen/Haseltine* evidence.

¶ 10.   The State responds that Prineas failed to preserve the issue because he did not object on these grounds at trial. To preserve the right to appeal on admissibility of evidence, a litigant must inform the circuit court of the specific grounds for the objection. *See State v. Tutlewski*, 231 Wis. 2d 379, 384, 605 N.W.2d 561 (Ct. App. 1999). Prineas objected to Stephan's testimony on hearsay grounds and on grounds a proper foundation was not presented for Stephan's opinion. He did not object on *Jensen/Haseltine* grounds that the testimony improperly vouched for the veracity of the victim. We agree with the State that the argument is waived.

¶ 11.   Although Prineas failed to object to the testimony as *Jensen/Haseltine* evidence, he now asks us to reverse under the plain error rule or in the interests of justice. WISCONSIN STAT. § 752.35 (2005–06)[1] gives the court of appeals authority to examine the record and, in the interest of justice, reverse the judgment regardless of whether a proper objection was made at trial. We exercise our discretionary reversal power only sparingly. *See Vollmer v. Luety*, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990). The plain error rule requires that the objectionable testimony "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992) (citation omitted).

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

¶ 12.   As the circuit court noted, Stephan did not offer an opinion about the cause of Keri's abrasion, she stated that the abrasion was "consistent" with an injury that resulted from "penetration." In fact, Stephan acknowledged that she did not know what caused the abrasion. We have allowed such testimony in the past. *See, e.g., State v. Ross*, 203 Wis. 2d 66, 79–81, 552 N.W.2d 428 (Ct. App. 1996) (allowing testimony because the nurse did not testify that the victim's physical condition was the result of sexual assault). Furthermore, we observe that Stephan's objectionable statement regarding patient histories was elicited by defense counsel during cross-examination. Counsel likely expected Stephan to testify that some complainants are not forthcoming but, surprisingly, she did not. Our review of the record, particularly the whole of Stephan's testimony, convinces us that the exercise of our discretionary reversal power is not required here.

*Substitution of counsel and motion for continuance*

¶ 13.   Prineas next argues that the circuit court erred when it denied his motion for substitution of counsel one week prior to the trial date. Decisions related to the substitution of counsel are within the sound discretion of the circuit court. *See Wheat v. United States*, 486 U.S. 153, 164 (1988). When making a determination whether to allow the defendant's counsel of choice to participate, the circuit court must balance that right against the public's interest in the prompt and efficient administration of justice. *State v. Lomax*, 146 Wis. 2d 356, 360, 432 N.W.2d 89 (1988) (the court should strike a proper balance between the defendant's constitutional right to counsel with society's interest in efficient administration of justice). Several factors assist

the court in balancing the relevant interests, for example: the length of delay requested; whether competent counsel is presently available and prepared to try the case; whether prior continuances have been requested and received by the defendant; the inconvenience to the parties, witnesses and the court; and whether the delay seems to be for legitimate reasons or whether its purpose is dilatory. *See id.*

¶ 14. In *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), the U.S. Supreme Court explained that the right to counsel derived from the Sixth Amendment includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *Id.* at 144. "[T]he Sixth Amendment right to counsel of choice . . . commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he [or she] believes to be best." *Id.* at 146. However, *Gonzalez-Lopez* makes clear that the right to counsel of choice is not unlimited:

> We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness . . . . The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.

*Id.* at 152 (citations omitted). Thus, under the Sixth Amendment, a defendant has only a presumptive right to employ his or her chosen counsel. *See Wheat*, 486 U.S. at 159.

¶ 15. Recently, the United States Court of Appeals, Seventh Circuit, affirmed this presumption, stat-

427

ing that under the Sixth Amendment, a non indigent defendant has a "right to select, and be represented by, one's preferred attorney; thus, trial courts must recognize a presumption in favor of a defendant's counsel of choice." *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).[2] Furthermore, the Fourteenth Amendment prevents a court from arbitrarily or unreasonably denying a defendant the right to obtain a continuance. *Id.* at 1024–25. Accordingly, the precise issue presented by Prineas is whether the circuit court's denial of his motion for substitution and a continuance was arbitrary or unreasonable and therefore violated his constitutional rights. Prineas asserts that, applying *Carlson*, the circuit court's denial was error.

¶ 16. In *Carlson*, a jury convicted Matthew Carlson of first-degree sexual assault of a child and the court sentenced him to fifty-five years in prison. *Id.* at 1020. The charges stemmed from reports made in 2002 by a fifteen-year-old boy who alleged he was repeatedly assaulted by Carlson in 1996 and 1998. *Id.* Carlson hired attorney Randall Kaiser to represent him. *Id.* Carlson was arraigned on May 20, 2002, and the circuit court set a trial date of August 27. *Id.* Carlson remained in jail pending the trial. *Id.* During this time, Carlson requested two continuances and both were denied. *Id.* On August 17, ten days before the scheduled trial date, Carlson notified Kaiser that he had hired another attorney to replace him. *Id.* Two days after that, Kaiser moved to withdraw. *Id.* On August 23, Carlson and his newly retained attorney, Robin Shellow, moved to substitute, conditioned upon an adjournment to allow

---

[2] *Carlson v. Jess*, 526 F.3d 1018 (7th Cir. 2008), was decided after briefing for this appeal had concluded. We ordered, and the parties both submitted, supplemental briefs limited to the topic of *Carlson*'s impact on this issue.

Shellow to prepare for trial. *Id.* Shellow provided a detailed explanation of the additional investigation she planned to conduct before trial. *Id.*

¶ 17. The state circuit court did not hear Carlson's motion until August 26, the day before the trial was to start. *Id.* at 1021. The court denied the motion for substitution of counsel and a continuance, citing the need for the orderly administration of justice and the fact that the case involved a young victim. *Id.* The court noted that it believed Carlson could get a fair trial because his current attorney had been working on it and had been in court "numerous times." *Id.* The morning of the trial, Carlson addressed the court and described the breakdown of communication between himself and Kaiser, along with Kaiser's lack of action on witnesses Carlson believed would strengthen his defense. *Id.* at 1022. The court acknowledged that some situations require substitution of counsel but that it appeared to the court that the relationship between Carlson and Kaiser was merely suffering from differing views on how to strategically approach the case. *Id.* The trial proceeded and the jury convicted Carlson on five counts of first-degree sexual assault of a child. *Id.* at 1023.

¶ 18. Carlson, having failed to obtain relief in the state appellate system, petitioned the federal district court for habeas relief. *Id.* The district court determined that the record did not support the state circuit court's finding that communication between Carlson and Kaiser had not totally broken down. *Id.* Holding the circuit court's finding to be unreasonable and arbitrary, the federal district court granted Carlson's petition. *Id.* The Seventh Circuit took up the appeal and affirmed, holding that "[t]he record reveals absolutely no support for the state trial court's determination that Carlson's motion for substitution was based on 'differ-

ing views of how the case is approached' and 'strategic decision[s].' " *Id.* at 1024. The Seventh Circuit ordered that Carlson be released from custody unless the State provided a new trial within one hundred eighty days. *Id.* at 1028.

¶ 19.  Prineas exhorts us to follow the *Carlson* court's example and cast the circuit court decision to deny his motion for substitution and a continuance as unreasonable and arbitrary. We agree that some similarities exist. Like Carlson, Prineas had made no previous attempt to substitute counsel and had no pattern of "gaming" the system. *See id.* at 1026. The charges had been pending against him for a relatively short period of time and he made his motion soon after he retained new counsel. *See id.* And finally, like Carlson, Prineas was seeking to substitute retained counsel rather than appointed counsel. *See id.* at 1027.

¶ 20.  As the State observes, there are significant distinctions between this case and *Carlson* as well. For example, the record indicates that the circuit court balanced Prineas' right to counsel against the victim's desire to see the trial go forward. At the motion hearing, the prosecutor advised the court that she had spoken with Keri, who stated that "[s]he wanted the case to go forward and be done so she could get on with her life. Postponement would be very hard on both the victim and her mother." In *Carlson,* the state circuit court "ignored the presumption in favor of Carlson's counsel of choice and insisted upon expeditiousness for its own sake." *Id.* at 1027.

¶ 21.  Here, the court gave Prineas the opportunity to explain the need for substitution and a continuance. The record includes the following dialogue:

> COURT:  Just the desire to change attorneys at this late stage . . . on the eve of trial, is not something that I would grant except in an extraordinary reason. And

430

unless I . . . am given other things other than just a simple desire to change attorneys at this late date, I'm not going to grant [the motion].

Can [Prineas] give me anything else?

. . . .

[DEFENSE COUNSEL:] I am aware the court understands I find myself in a very awkward position because of this, as I said . . . . At a minimum there's been an indication on someone's part that alternate counsel is being sought . . . . I'm very uncomfortable with the situation. I frankly feel as if I'm being set up for, at a minimum, an ineffective claim should the trial not go according to someone's wishes.

. . . .

[COURT] [addressing Prineas' proposed counsel]:   You understand that I'm not going to grant that continuance under these circumstances unless you perhaps on behalf of the defendant can give me some extraordinary reason other than just a simple desire to change counsels at this late date.

[COUNSEL:] There is no extraordinary reason of which I am aware, your honor.

¶ 22.   In contrast, Carlson's newly retained counsel provided the court with an extensive list of investigative actions, procedural motions, and strategic avenues she believed would be needed to provide Carlson with effective representation at trial. *Id.* at 1021. She argued at the motion hearing that inquiries into the alleged victim's motives for making such delayed accusations against Carlson needed to be explored. *Id.* She asserted that there were possible issues of improper

431

police procedures and *Miranda*[3] violations that were not raised in pretrial motions. *Carlson*, 526 F.3d at 1021. In response, the state circuit court simply asked if she would be prepared to try the case the next day. *Id.* When counsel replied she would not, the court denied the motion. *Id.*

¶ 23.   Carlson himself addressed the court, describing a complete breakdown of communication between himself and his attorney. He told the court that he had "not received one piece of paper concerning this case," had advised his attorney of several possible witnesses that could strengthen his defense but his attorney felt he "doesn't . . . need," and that when he conveyed his concerns to his attorney he was "met with argumentative comments." *Id.* at 1022. Nonetheless, the state circuit court concluded it was merely a case of "differing views" on the approach to the case and on strategy. *Id.* This led the Seventh Circuit to conclude that the state circuit court's decision was, in light of all of the facts on the record, unreasonable. *Id.* at 1024.

¶ 24.   We reach a different conclusion here. When it made the decision to deny Prineas his counsel of choice, the circuit court properly balanced Prineas' request against the public's interest in the prompt and efficient administration of justice. See *Lomax*, 146 Wis. 2d at 360. Several factors weigh in favor of the court's exercise of its discretion, for example:   Prineas did not specify the length of delay that would be required; he did not dispute his current counsel's ability to try the case; the court considered the inconvenience to the court and the concerns of the victim; and Prineas provided no reason for substitution and the accompanying delay. *See id.*; *see also State v. Wedgeworth*, 100

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Wis. 2d 514, 521, 302 N.W.2d 810 (1981) (court may assume that if there is a compelling reason existing why counsel cannot provide adequate representation it would have been mentioned).

¶ 25.   We acknowledge that on appeal Prineas presents an extensive argument that mirrors Carlson's complaints of ineffective assistance of counsel and a breakdown in communication. Those arguments, however, are raised for the first time on appeal and will not be considered. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (on review of circuit court's decision to deny motion to replace existing retained counsel with new retained counsel, the appellate court should consider "the reasons presented to the trial judge at the time the request [was] denied"). If Prineas had concerns about the quality of representation he was receiving prior to trial, he had the opportunity to so advise the court at the motion hearing. The record demonstrates that the circuit court allowed both attorneys to speak in support of Prineas' motion, but neither provided a substantive response. As the circuit court notes in its postconviction order, "How could the court use the . . . balancing test that the court is invited to do by [Prineas] when the court was given nothing to balance from the defendant's side?"

*Use of unproven and acquitted charges at sentencing*

¶ 26.   Prineas next argues that we should remand the matter for resentencing because the circuit court's sentence was based on improper considerations. He points to the court's references to the sexual assault charge alleging anal intercourse, of which Prineas was

acquitted. He asserts that the court was clearly persuaded that the anal intercourse occurred and "the concept . . . was so abhorrent [to the court]" that engaging in such an act demonstrated a flawed character. Prineas also argues that when the State produced a police report relaying a complaint from another woman about Prineas' sexually inappropriate conduct towards her at the same party, Prineas was caught off guard. He contends that the court "gave full credence" to the complainant's story, "despite the fact that she never appeared in court, never testified, and was not even identified such that the defense could conduct the [necessary] investigation . . . ."

¶ 27.   Prineas contends that the circuit court's consideration of an accusation that was never formally charged and of a charge for which he was acquitted violated his right to due process. He directs us to *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), for the proposition that he should be sentenced "only for conduct specifically charged and proven beyond a reasonable doubt."[4] It is true that a defendant is entitled to resentencing when a sentence is affected by a circuit court's reliance on an improper factor. *State v. Leitner*, 2002 WI 77, ¶ 42, 253 Wis. 2d 449, 646 N.W.2d 341. The question here is whether the police report of another woman's encounter with Prineas and the acquitted

---

[4] However, Prineas does not argue that the court sentenced him on the uncharged or unproven conduct. Rather, he argues that the uncharged and unproven conduct were improper factors used to craft the sentence the court imposed on the two charges that were specifically charged and proven beyond a reasonable doubt.

charge involving anal intercourse were proper factors to consider at sentencing. We conclude that they were.

¶ 28. In Wisconsin, "[a] sentencing court may consider uncharged and unproven offenses and facts related to offenses for which the defendant has been acquitted." *Id.*, ¶ 45 (footnote omitted). Sentencing courts are "obliged to acquire" full knowledge of the character and behavior pattern of the defendant before imposing sentence. *Id.* There is a

> well-recognized distinction between the fact-finder's function at the guilt stage, where the fact-finder must determine whether the government has proved a defendant's guilt beyond a reasonable doubt, and the sentencing judge's role, which is to assess the defendant's character using all available information, unconstrained by the rules of evidence that govern the guilt-phase of a criminal proceeding.

*State v. Arredondo*, 2004 WI App 7, ¶ 53, 269 Wis. 2d 369, 674 N.W.2d 647 (2003); Wis. Stat. § 911.01(4)(c) (rules of evidence are inapplicable to sentencing proceedings). The United States Circuit Court of Appeals, Tenth Circuit, sums it up aptly: "[T]he sentencing judge is entitled to all the help he [or she] can get." *United States v. Majors*, 490 F.2d 1321, 1322 (10th Cir. 1974), *cert. denied*, 420 U.S. 932 (1975). When the circuit court weighed the uncharged accusation that Prineas engaged in sexually inappropriate behavior toward another woman at the same party that Keri attended, and when it referred to the conduct underlying the acquitted charge, the court fulfilled its obligation to consider Prineas' character and behavior patterns before imposing sentence.

435

*Unduly harsh or excessive sentence*

¶ 29.   Prineas also asserts his sentence was overly harsh and excessive when compared to the average sentence for a first-time offender with his unblemished history. A sentence is unduly harsh when it is "so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). We review an allegedly harsh and excessive sentence for an erroneous exercise of discretion. *See State v. Giebel*, 198 Wis. 2d 207, 220, 541 N.W.2d 815 (Ct. App. 1995). Our review is, however, conducted in light of a strong public policy against interference with the circuit court's sentencing decision. *State v. Gallion*, 2004 WI 42, ¶ 18, 270 Wis. 2d 535, 678 N.W.2d 197.

¶ 30.   A circuit court's sentencing discretion is tethered to three primary factors:   the gravity of the offense, the character of the offender and the need to protect the public. *Elias v. State*, 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980). Other factors have also been recognized as proper sentencing considerations, for example: a past record of criminal offenses; a history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the vicious or aggravated nature of the crime; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance and cooperativeness; the defendant's need for close rehabilitative control; the

rights of the public and the length of pretrial detention. *See State v. Tew*, 54 Wis. 2d 361, 367–68, 195 N.W.2d 615 (1972), *overruled on other grounds, Byrd v. State*, 65 Wis. 2d 415, 425, 222 N.W.2d 696 (1974). The weight to be given each factor is a determination particularly within the wide discretion of the sentencing judge. *State v. Stenzel*, 2004 WI App 181, ¶ 9, 276 Wis. 2d 224, 688 N.W.2d 20.

¶ 31. Prineas emphasizes his first-time-offender status, which suggests a low risk to reoffend, and what he characterizes without elaboration as the "mitigated offense severity" of his crime. He complains that the circuit court did not judge him to be credible, despite the jury's decision to acquit him on four of six charges. Prineas argues that probation alone would have been appropriate under the circumstances. He directs us to *Gallion*, 270 Wis. 2d 535, ¶ 25, where our supreme court stated:

> Probation should be the sentence unless the court finds that:
>
> (i) confinement is necessary to protect the public from further criminal activity by the offender; or
>
> (ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
>
> (iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.

(Citation omitted.)

¶ 32. Prineas' sentence must first be placed in context. He was convicted of two counts of second-degree sexual assault, contrary to Wis. Stat. § 940.225(2)(a). Second-degree sexual assault is a Class

C felony. Sec. 940.225(2). Therefore, Prineas faced a maximum term of initial confinement of twenty-five years and a maximum term of extended supervision of fifteen years for each conviction. WIS. STAT. § 973.01(2)(b)3. and (d)2. He received ten years' initial confinement and ten years' extended supervision on the first count, and a concurrent thirty-year term of probation on the second. The term of confinement is less than the twelve to twenty years recommended by the State, but more than the six to eight years recommended in the presentence investigation report.

¶ 33. When it imposed its sentence, the circuit court rejected the State's recommendation of twelve to twenty years of confinement and acknowledged that there were "many good things about [Prineas]" that supported lesser confinement. It concluded that probation alone, however, "would unduly depreciate the seriousness of the offense." The court also regarded Prineas' apology to be superficial. It stated that Prineas demonstrated a disregard for the victim and failed to take responsibility for his actions. This convinced the court that Prineas posed a continuing risk and confinement would be necessary to protect the public and to provide Prineas with the necessary treatment. Finally, the court considered the gravity of the offense, characterizing sexual assault as a "heinous offense in our society," which required a deterrent. The court correctly held that these considerations weighed in favor of confinement rather than probation. *See Gallion*, 270 Wis. 2d 535, ¶ 25.

¶ 34. We ascertain no error in the sentence imposed by the circuit court. It properly considered the primary sentencing factors, determined that probation would not be an appropriate disposition, and crafted a sentence that was well within the maximum statutory

term allowed. Prineas has not shown that his sentence was predicated on some unreasonable balancing of the relevant factors, only that the circuit court exercised its discretion differently than Prineas had hoped. That, however, is not an erroneous exercise of discretion. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981) (our inquiry is whether discretion was exercised, not whether it could have been exercised differently).

*Ineffective assistance of counsel*

¶ 35. Prineas raises one last issue: ineffective assistance of trial counsel. His primary assertion here is that his trial attorney did not adequately investigate the evidentiary implications of a condom that Prineas produced as the one used during sexual intercourse with Keri. More specifically, Prineas argues that his attorney should have had the condom tested for fecal matter, which he asserts would have been absent, and hired an expert to opine that the absence of fecal matter on the condom confirmed no anal intercourse occurred. We confess some befuddlement about Prineas' dissatisfaction with his representation in this regard. He claims that his defense to the anal intercourse charge was deficient, yet the jury acquitted him on this charge. Even if counsel should have pursued the scientific evidence, clearly failure to do so was not prejudicial. A defendant claiming ineffective assistance of counsel must establish that: (1) the lawyer was deficient and (2) the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the prejudice aspect of *Strickland*, the defendant must demonstrate that the lawyer's errors were sufficiently serious to deprive him or her of a fair proceeding and a

reliable outcome. *Id.* at 687, 694. Prineas cannot credibly argue that representation leading to an acquittal deprived him of a fair proceeding or favorable outcome.

¶ 36.   Prineas lobs various other allegations, asking that we deem the cumulative affect of "many deficiencies" to amount to ineffective assistance of counsel. He characterizes his counsel's approach to gathering evidence as "lackadaisical" and asserts that the pretrial investigation efforts were minimal. He summarizes as follows:

> [Trial counsel] failed to research whether testing was available to detect fecal matter, failed to have the condom tested, failed to investigate [the victim's friend's] phone records, failed to visit the scene and failed to hire an investigator. Had he not abdicated his duty to his client in these matters, it could have made a big difference to Prineas.

Again, we observe that Prineas was acquitted on four of six charges against him. Ineffective assistance of counsel requires a showing of prejudice. *See id.* Despite the alleged deficiencies in his attorney's performance, Prineas has offered nothing to support the conclusion that his trial was unfair or the outcome was unreliable.

## CONCLUSION

¶ 37.   Our review of the record confirms that Prineas waived his objection to Stephan's testimony on *Jensen/Haseltine* grounds and that discretionary reversal is not required under the circumstances presented. We further hold that the circuit court properly exercised its discretion when it balanced judicial efficiency and the express wishes of the victim against Prineas' presumptive right to counsel of choice. When prompted by the court, neither Prineas' existing attorney nor his

proposed attorney offered any reason for the substitution. We also conclude that the sentence imposed by the circuit court was well within the bounds of its discretion, was based on appropriate sentencing factors, and was reasonably related to the stated sentencing goals of the court. Finally, we conclude that Prineas has not demonstrated any prejudice that resulted from allegedly deficient acts or omissions of his trial counsel and thus his claim for ineffective assistance of counsel must fail. We affirm the judgment and the order of the circuit court.

*By the Court.*—Judgment and order affirmed.