COURT OF APPEALS
DECISION
DATED AND FILED

October 24, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1267**

Cir. Ct. No. **2023TP45**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE TERMINATION OF PARENTAL RIGHTS TO K.D.,
A PERSON UNDER THE AGE OF 18:

DANE COUNTY,

PETITIONER-RESPONDENT,

V.

L.D.D.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Dane County: RYAN D. NILSESTUEN, Judge. *Affirmed.*

¶1  KLOPPENBURG, J.[1]  L.D.D. appeals orders of the Dane County Circuit Court terminating her parental rights to her child and denying her motion to vacate a default judgment.  The circuit court found that L.D.D. was in default when she failed to appear at a hearing on the petition to terminate her parental rights and granted the County's request for a default judgment as to grounds after determining that grounds for termination existed.[2]  The court then held a dispositional hearing, at which L.D.D. also failed to appear, and entered a final order terminating L.D.D.'s parental rights after determining that terminating her parental rights was in the child's best interest.  The court subsequently denied L.D.D.'s motion to vacate the default judgment.  On appeal, L.D.D. argues that the court erroneously exercised its discretion in entering the default judgment and in denying the motion to vacate that judgment.  For the following reasons, I affirm the circuit court's orders.

## BACKGROUND

¶2  Dane County filed a petition to terminate L.D.D.'s parental rights to her child in August 2023.[3]  The petition along with a summons and notice of

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  Involuntary termination of parental rights cases follow a "two-part statutory procedure."  *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  "In the first [fact-finding], or 'grounds' phase of the proceeding, the petitioner must prove by clear and convincing evidence that one or more of the statutorily enumerated grounds for termination of parental rights exist."  *Id.*; WIS. STAT. § 48.31(1).  If it finds that such grounds exist, the circuit court then proceeds to the second, or "dispositional" phase, in which it decides whether it is in the best interest of the child that the parent's rights be terminated.  *Steven V.*, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).

[3]  The County also petitioned to terminate the parental rights of the child's biological father, and his parental rights were ultimately terminated.  The termination of the father's parental rights is not at issue in this appeal.

2

hearing were personally served on L.D.D. on September 8, 2023. The notice of hearing included the following statement under the heading, "**NOTICE OF MOTION FOR DEFAULT JUDGMENT**": "**If you fail to appear at this hearing, or any subsequent hearing, the court may proceed to hear testimony and enter an order terminating your parental rights.** Petitioner will move for such judgment if you fail to appear in court as required." (Capitalization and bold in original.)

¶3 L.D.D. appeared without counsel at the initial hearing on the petition on September 12, 2023. At that hearing, L.D.D. said that she wanted to contest the petition to terminate her parental rights and that she did not want counsel appointed. The circuit court stated that it would appoint counsel. L.D.D. responded that she would "not show[] up to court" and would "let counsel show up to court" because she was tired of doing this "over and over again." The court ordered L.D.D. to appear in person at the next hearing on the petition, set for October 4, 2023. The court provided copies of the petition and the notice of the next hearing for L.D.D. to take with her. L.D.D. left at the conclusion of the hearing without taking the copies with her.

¶4 Also on September 12, 2023, after the initial hearing concluded, the circuit court asked the State Public Defender ("SPD") to assign counsel to L.D.D. Both the appointment clerk and previously appointed counsel at the SPD reached out to L.D.D., who declined representation.

¶5 L.D.D. failed to appear at the October 4, 2023 hearing on the petition, and the circuit court found that her failure to appear was egregious and without a clear and justifiable excuse. The County presented evidence and testimony supporting the grounds for termination alleged in the petition, and the

court found that the testimony and evidence sufficed to establish the alleged grounds. Accordingly, the court granted the County's request for default judgment as to grounds and set the dispositional hearing for October 12, 2023.

¶6 L.D.D. failed to appear at the dispositional hearing on October 12. The circuit court heard testimony presented by the County and the recommendation by the guardian ad litem, determined that terminating L.D.D.'s parental rights was in the best interest of the child, and subsequently entered an order terminating L.D.D.'s parental rights.

¶7 In March 2024, L.D.D., represented by counsel, moved to vacate the default judgment under WIS. STAT. § 48.46(1), which provides that a parent "may at any time within one year after the entering of the court's order petition the court for a rehearing on the ground that new evidence has been discovered affecting the advisability of the court's original adjudication."[4] The parties submitted briefs and presented argument at a hearing on the motion, and the circuit court denied it. I will discuss the circuit court's decision in detail in the analysis that follows.

¶8 L.D.D. appeals.

## DISCUSSION

¶9 L.D.D. argues that the circuit court erred when it entered a default judgment based on her failure to comply with the court's order requiring her to appear at the October 4 hearing and when it denied her motion to vacate the

---

[4] L.D.D. also moved to vacate the default judgment under WIS. STAT. § 806.07(1)(a) and (g). On appeal, L.D.D. renews her arguments under WIS. STAT. § 48.46(1) only and, therefore, I address only that statute.

default judgment based on new evidence. This court reviews a circuit court's entry of a default judgment, and a circuit court's decision to grant or deny a motion to vacate a default judgment, for an erroneous exercise of discretion. *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶18, 246 Wis. 2d 1, 629 N.W.2d 768 (entry of default judgment); *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977) (decision to grant or deny motion to vacate default judgment). "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198.

## I. Grant of Default Judgment

¶10 Pursuant to its inherent and statutory authority, a circuit court "may enter a default judgment against a party that fails to comply with a court order." *Evelyn C.R.*, 246 Wis. 2d 1, ¶17 (citing WIS. STAT. §§ 802.10(7), 804.12(2)(a), and 805.03); *see also Steven V. v. Kelley H.*, 2004 WI 47, ¶32, 271 Wis. 2d 1, 678 N.W.2d 856 (the rules of civil procedure generally apply in termination of parental rights proceedings, including rules permitting default judgment). Under WIS. STAT. § 805.03, the court may enter a default judgment for failure to comply with a court order only if the court finds that the non-complying party acted "egregiously or in bad faith." *Mable K.*, 346 Wis. 2d 396, ¶69.

¶11 Here, the circuit court entered a default judgment against L.D.D. under WIS. STAT. § 805.03 based on her "egregious" failure to comply with the court's order requiring her to appear at the October 4 hearing. The court based its decision in part on what had occurred at the September hearing. Accordingly, I first summarize what the transcript shows occurred at the September hearing and

what the transcript shows the court decided when L.D.D. did not appear at the October 4 hearing. I next explain my conclusion that the court did not erroneously exercise its discretion in entering the default judgment and reject L.D.D.'s arguments to the contrary.

*September 12 Hearing*

¶12    The circuit court began by asking L.D.D. whether she contested the petition, and she responded, "Yes." The court then asked L.D.D. if she wanted to have legal counsel, and she responded, "No," and told the court that an earlier petition was dismissed and she did not understand why the case "is still going on." The court asked L.D.D. if she wanted to have an attorney "help you with this," and she responded that the proceedings had been going on for six years without providing any proof to support termination. The court stated, "[I]f you want to have an attorney, I can get you an attorney; and then we're getting to be setting up some dates in terms of where you can make just those arguments." L.D.D. explained that she was "past frustration" with the legal system. The court stated, "I am going to appoint you counsel because I think it's important for all the reasons you said." L.D.D. responded, "When you appoint counsel, I am not showing up to court."

¶13    The circuit court explained the two-phased procedure and L.D.D.'s rights to a jury trial, to testify, and to cross-examine witnesses, and stated, "So that is why I'm appointing you an attorney to help you with all that.… You also have the right to be represented by an attorney. If you cannot afford an attorney, the Public Defender's Office will appoint one. I'm going ahead and I'm appointing an attorney today."

6

¶14    Counsel for the County asked that the circuit court clarify to L.D.D. the consequences for nonappearance and that "she can't appear simply through her attorney." The court began to tell L.D.D., "[I]t's important to participate because what can happen if you don't show up is—" when L.D.D. interrupted, saying that she got "nowhere" after participating the past six years and that "I am not going to participate." The court continued, "The reason why it's important in this case, going forward, if you don't appear, what they're going to do is they're going to ask me to find you in default. And what that means then is we proceed without you having … the ability to—". L.D.D. again interrupted, saying that she would go to the Supreme Court because her prior case had been dismissed. This exchange followed:

> Court:  [T]his is why I'm appointing an attorney so they can answer all your—
>
> L.D.D.:  And that is why they can represent me, and they can show up in court for me. I don't have to show up in court at all again. That's what I'm saying. If you appoint me counsel, I don't need to show up in court.
>
> Court:  I'm actually ordering you to be here, in person.
>
> L.D.D.:  And I'm not and I'm telling you that I'm not going to.

¶15    The circuit court then set the date and time for the next hearing and asked L.D.D., "Did you hear that date…? We're going to print out a piece of paper so—". L.D.D. interrupted, saying, "It don't matter. Just print it." The court repeated that "I'm also going to be appointing counsel for you." The court confirmed that the Clerk would provide L.D.D. with a copy of the petition, the summons, and the notice of hearing. L.D.D. said, "I don't want it. Y'all can just keep it. I'm not going to accept it." L.D.D. "left the proceedings without receiving any paperwork."

7

*October 4 Hearing*

¶16    The County asked the circuit court to find L.D.D. in default "for an egregious failure to appear."

¶17    The circuit court noted that, at the September hearing:

> I … attempted to give [L.D.D.] a copy of the petition…. She refused a copy of the petition…. In addition to that … we set the time for today's hearing. I set that orally. We also printed out a notice to hand to [L.D.D.], but she refused the notice. And in addition, I … gave her default warnings and that was also contained in the notice.

The court further explained that, at the September hearing:

> I did order her to appear in person [at the October hearing]. I gave her a specific warning about what it would mean to be in default, and she failed to comply with my order. And I think based on her conduct, especially with regards to when I appointed counsel for her and how she engaged with [the SPD], and then her failure to show up here, … and she hasn't provided any excuse. And I think she was fairly defiant in her behavior at the last hearing and indicated then [that she] … didn't want to engage in this process[.]

The court found L.D.D.'s failure to comply with its order requiring her to appear at the October 4 hearing egregious and without a clear and justifiable excuse.

*Analysis*

¶18    I conclude that the circuit court did not erroneously exercise its discretion in entering a default judgment against L.D.D. based on her failure to comply with the court's order requiring her to appear at the October 4 hearing. The court examined the relevant facts, all of which are supported in the record, when it noted that it ordered her personal appearance, that she was warned about the consequences of being in default, that she was "defiant" in response, and that

she provided no excuse for failing to appear in violation of the court's order. The court also applied the proper standard of law by applying the rule that a court may enter a default judgment against a party that fails to comply with a court order if it determines that the party acted "egregiously." *See Mable K.*, 346 Wis. 2d 396, ¶69; WIS. STAT. § 805.03. The court further reached a reasonable conclusion that L.D.D.'s failure to comply with the court's order requiring her to appear at the October 4 hearing was egregious using a rational process as reflected in the court's remarks quoted above.

¶19    L.D.D. argues that the circuit court erroneously exercised its discretion because it reached an unreasonable conclusion that L.D.D.'s failure to comply with the court's order requiring her to appear at the October 4 hearing was egregious. L.D.D. argues that the conclusion was unreasonable because the court failed to fully examine the relevant facts. Specifically, L.D.D. argues that the court incompletely examined the facts regarding: (1) the court's statements at the September hearing about the appointment of counsel and the consequences of default; (2) an appeal by L.D.D. that was pending at the time of the October 4 hearing showing that she contested the petition; and (3) L.D.D.'s mental health issues. L.D.D.'s arguments fail for the following reasons.

¶20    L.D.D. first argues that the circuit court erred in finding that it had appointed counsel based on what it said at the September hearing because it did not appoint counsel after that hearing. However, the distinction that L.D.D. seeks to draw between what the court said and what it did is neither meaningful nor reasonable. L.D.D. accurately notes that at the September hearing the court told her multiple times that it was "going to appoint" or was "appointing" an attorney. The record establishes that the court promptly followed up by directing the SPD to contact L.D.D. in order to set her up with counsel. It is both evident from, and a

reasonable interpretation of, the court's statements that it used the phrase "appointing an attorney" as shorthand for the process that the court initiated, by which the court would direct the SPD to contact the party, and the SPD, after working out the details, would submit a proposed order appointing counsel for the court's signature. By using that shorthand, the court was indicating that it was prepared to sign such an order. L.D.D. suggests that when the court told her it was appointing counsel it was obligated to instruct her to obtain counsel through the SPD. But she does not explain how the court failed to fulfill its obligation when it instead instructed the SPD to contact L.D.D. in order to provide her with counsel.

¶21    L.D.D. argues that the circuit court erred in faulting her for declining the SPD's appointed counsel because the court did not conduct a proper colloquy with L.D.D. about waiving her right to counsel. However, the issue of whether L.D.D. waived her right to counsel is not relevant to this appeal because the record shows that the court did not grant the default judgment on the ground that L.D.D. refused counsel. While the court noted L.D.D.'s response to the SPD's attempt to appoint counsel as a contributing factor to its finding of egregiousness, the primary factors on which the court relied were L.D.D.'s failure to comply with the court's order requiring that she personally appear at the October 4 hearing, her failure to provide an excuse for not appearing, and her overall "defiant" conduct with respect to the court and the proceedings.

¶22    L.D.D. may also be arguing that the circuit court lacked authority to require her personal appearance at the October 4 hearing and that the court was instead obligated to ensure that the counsel that the court said it "was appointing" appear. However, L.D.D. does not cite legal authority supporting such a proposition. L.D.D. makes reference to WIS. STAT. § 48.23 and case law interpreting that statute, but the court entered the default judgment under WIS.

STAT. § 805.03, not § 48.23. In sum, L.D.D. fails to show that the circuit court incompletely examined the facts regarding the court's statements at the September hearing about the appointment of counsel.

¶23 L.D.D. next argues that the circuit court incompletely examined the facts regarding the court's statements at the September hearing about the consequences of default. The record shows to the contrary. When the court first attempted to tell L.D.D. what would happen if she did not personally appear in court at future hearings, L.D.D. interrupted, saying that her participation means "nothing." The court then told her that her personal appearance "in this case, going forward" was important because, if she did not appear in person, then the County would move for default. As the court began to explain what "default" meant, saying "what that means then is we proceed without you having … the ability to," L.D.D. interrupted, and the court did not finish the explanation. Instead, as L.D.D. continued to interrupt the court, the court told her, "I'm actually ordering you to be here, in person." The court also had the clerk print out copies of the petition and notice of hearing to provide to L.D.D., which contained the default warnings for failure to appear at court hearings.

¶24 When L.D.D. failed to appear at the October 4 hearing, the circuit court stated that at the September hearing it had "advised [L.D.D.] … in terms of default and [given] her default warnings … [which were] also contained in the notice [of hearing]." As shown in the preceding paragraph, the court accurately stated that it had advised L.D.D. that if she failed to appear she could be found in default. The court also accurately stated that it had given her the warnings explaining the meaning of default by providing her the petition and notice of hearing, which she refused to take. L.D.D. fails to show that the court

incompletely examined the facts regarding the court's statements at the September hearing about the consequences of default.

¶25    L.D.D. next argues that the circuit court incompletely examined the facts regarding an appeal by L.D.D. that was pending at the time of the October 4 hearing.  L.D.D. argues more specifically that the court did not acknowledge that L.D.D. was attempting to contest the petition in the appellate court.  However, L.D.D. told the court at the September hearing that she contested the petition, and the court in its remarks about the importance of both her personal appearance at future hearings and the court's appointing counsel stemmed from precisely the reasons and arguments offered by L.D.D. for why she disagreed with the petition. L.D.D. fails to show that the court incompletely examined the facts regarding her contesting the petition.

¶26    L.D.D. also argues that the circuit court incompletely examined the facts regarding her mental health issues.  Before the court made its default ruling, it heard from the guardian ad litem who entered "an admission to the petition," and heard testimony from the social worker assigned to L.D.D.'s termination of parental rights case.  The social worker testified as to L.D.D.'s mental health diagnoses and her "struggles" with complying with the conditions of return requiring that she undergo treatment for her mental health issues.  In finding that the County had proven the alleged grounds for termination, the court found that L.D.D. had not "treated her mental health as required" and that as a result of her noncompliance her mental health had worsened.  Thus, the court was aware of L.D.D.'s mental health issues when it entered the default judgment.

¶27    L.D.D.'s argument about the circuit court's failure to fully consider her mental health issues is in effect an argument that the court should have

exercised its discretion differently by giving weight to her mental health issues as the court considered her defiant conduct at the September hearing and her failure to comply with its order requiring her to appear at the October 4 hearing. However, L.D.D. points to no basis in the record for the court to have given weight to her mental health issues in connection with her failure to appear *at the time* that the court made its default ruling. And, this court will not disturb a circuit court's discretionary decision on the basis that the circuit court should have exercised its discretion differently. *State v. Prineas*, 2009 WI App 28, ¶34, 316 Wis. 2d 414, 766 N.W.2d 206. I address L.D.D.'s argument that her mental health issues constituted *new evidence* in support of her motion to vacate the default judgment in the next section.

¶28     Finally, L.D.D. argues that, in light of the asserted factual errors above, the circuit court erroneously exercised its discretion in concluding that her failure to appear at the single October 4 hearing was egregious. However, I have concluded that L.D.D. fails to show that the circuit court made the factual errors she asserts, and L.D.D. cites no legal authority supporting the proposition that a party's failure to comply with a court order by failing to appear at one hearing is not a proper factor for the circuit court to consider in entering a default judgment against that party. *Cf. Barron Cnty. HHS v. S.R.T.*, Nos. 2018AP1574 and 2018AP1575, unpublished slip op. ¶17 (WI App May 22, 2019) (applying a statute different from WIS. STAT. § 805.03 and stating that WIS. STAT. § 48.23(2)(b)3. "does not prohibit a circuit court from finding a 'parent's conduct in failing to appear in person was egregious and without clear and justifiable excuse' after

missing only one hearing").[5]  Here, as explained above, L.D.D.'s failure to comply with the circuit court order requiring her to appear at the October 4 hearing was only one factor that the court considered in making its default ruling.

## II.  Denial of Motion to Vacate Default Judgment

¶29     Under WIS. STAT. § 48.46(1), a parent "whose status is adjudicated by the court … may at any time within one year after the entering of the court's order petition the court for a rehearing on the ground that new evidence has been discovered affecting the advisability of the court's original adjudication."[6]  A petitioner under § 48.46(1) must meet two requirements:  "(1) There must be shown the existence of newly discovered evidence, and (2) the evidence must be of such a character as to affect the advisability of the original adjudication." *Schroud v. Milwaukee Cnty. Dep't of Pub. Welfare*, 53 Wis. 2d 650, 654, 193 N.W.2d 671 (1972).

---

[5] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored unpublished opinions issued after July 1, 2009, for their persuasive value).

[6] The County argues that WIS. STAT. § 48.46(2) applies to L.D.D.'s motion and, therefore, that the motion was untimely.  That statute provides:

> A parent who has consented to the termination of [the parent's] parental rights under [WIS. STAT. §] 48.41 or who did not contest the petition initiating the proceeding in which [the parent's] parental rights were terminated may move the court for relief from the judgment on any of the grounds specified in [WIS. STAT. §] 806.07(1)(a), (b), (c), (d) or (f).  Any such motion shall be filed within 30 days after the entry of the judgment or order terminating parental rights[.]

Here, L.D.D. did not consent to the termination of her parental rights, did contest the petition to terminate her parental rights, and appeals only the denial of her motion based on new evidence under WIS. STAT. § 48.46(1).  Accordingly, her motion is not subject to the 30-day filing deadline in § 48.46(2).

14

¶30     In the circuit court, L.D.D., represented by counsel, sought a rehearing on the default judgment under this provision based on medical records showing that she was treated for mental health issues for a period beginning on the day after she did not appear at the October 4 hearing; she asserted that these records reflect the mental health issues that she was experiencing at the time of both the September 23 and the October 4 hearings.[7]  In her motion, L.D.D. noted that she was not providing the medical records because they contain irrelevant sensitive medical information but that she would provide the records to the circuit court for an in camera inspection at the court's request.  At the hearing on the motion, L.D.D. also offered to testify about her mental health issues at the time of the September 23 and October 4 hearings.  On appeal, L.D.D. argues that the court erroneously exercised its discretion because it applied an incorrect legal standard and denied the motion without giving L.D.D. the opportunity to present the new evidence.  I first summarize the court's ruling and then explain why L.D.D.'s arguments fail.

¶31     The circuit court held a hearing on L.D.D's motion at which it heard argument and made its ruling.  L.D.D. appeared by counsel and in person.  As stated, counsel told the court that L.D.D. was prepared to testify about her mental health issues at the time of the two hearings, for which she was subsequently treated beginning the day after the October 4 hearing.  The court accepted as true that L.D.D. was treated for mental health issues beginning the day after the

---

[7] In the circuit court, L.D.D. also argued that the transcript of the September hearing is new evidence under WIS. STAT. § 48.46(1) to the extent that it reflected that the court's explanation of the consequences of being found in default was incomplete and the court's statements about appointing counsel were inaccurate.  On appeal, L.D.D. does not challenge the court's decision that the transcript is not new evidence under § 48.46(1).  Accordingly, I do not consider that issue further.

October 4 hearing and that she was not complying with treatment at the time of the September 23 and October 4 hearings. However, the court determined that neither the post-October 4 medical records nor the testimony by L.D.D. about her mental health on September 23 and October 4 were necessary for the court to be aware of L.D.D.'s mental health issues at the time. The court explained that L.D.D.'s mental health struggles, including a pattern of "repeated hospitalizations" and subsequent "refusal to seek treatment," were evident as part of the factual basis for the petition.[8]

¶32    The circuit court further found that L.D.D. was "coherent … during the hearing," and it was clear that "she interacted back and forth with the [c]ourt about different things" and "made her wants well known." The court stated that while L.D.D. probably wished she had treatment before the September 23 hearing and that "with the benefit of hindsight she would make a different decision now[,]" "that doesn't make [the records and her testimony about her mental health issues at the time] new evidence warranting a rehearing." The court concluded that, because L.D.D.'s mental health issues were known to the court at the September hearing, testimony about those issues and records of her latest treatment were "cumulative" to the evidence before the court at the time that it made the default judgment ruling at the October 4 hearing and, therefore, were not new evidence warranting a rehearing on the default judgment.

¶33    L.D.D. argues that the circuit court applied the wrong legal standard. Specifically, she argues that the court erred in applying the definition of "newly

---

[8] In addition, the social worker testified at the October 4 hearing as to L.D.D.'s mental health "struggles" and her cycling in and out of treatment and noncompliance.

discovered evidence" in WIS. STAT. § 805.15(3), rather than the requirements for "new evidence" stated in WIS. STAT. § 48.46(1). Under § 805.15(3), a court must grant a party's motion for a new trial based on newly discovered evidence if the court finds that: (1) the evidence was brought to the party's attention after trial; (2) the party did not fail to exercise due diligence in seeking to discover it; (3) the evidence is material and not cumulative; and (4) the new evidence would probably change the result. Under § 48.46(1), a court must grant a parent's motion for a rehearing of the court's adjudication of the parent's child's status if the court finds that: (1) newly discovered evidence exists; and (2) the evidence is "of such a character as to affect the advisability of the original adjudication." *Schroud*, 53 Wis. 2d at 654. Thus, under both § 805.15(3) and § 48.46(1) as interpreted by *Schroud*, L.D.D. was required to show that newly discovered evidence existed.

¶34 Here, the circuit court looked to the definition of newly discovered evidence in WIS. STAT. § 805.15(3) to guide its analysis of whether L.D.D. showed the existence of newly discovered evidence under § 48.46(1). As recounted above, the court determined that the proffered medical records and testimony were cumulative to evidence that was before the court at the time that it made its default judgment ruling. That is, the court effectively determined that the first prong of the *Schroud* test was not met: L.D.D. failed to show the existence of newly discovered evidence. Accordingly, L.D.D. fails to show that the court applied the wrong legal standard.

¶35 L.D.D. also argues that the circuit court erroneously exercised its discretion when it denied her motion without giving her the opportunity to present the medical records documenting her treatment for mental health issues after the October 4 hearing and to offer testimony about her mental health issues at the time of the September 23 and October 4 hearings. However, the record recounted

above shows that the court accepted as true that the records would document her treatment as described and that she was not complying with treatment for her mental health issues at the time of the hearings. The court also explained that L.D.D.'s mental health issues and pattern of cycling through treatment and noncompliance with treatment were known to the court at the time of the hearings. In other words, the court determined that the new evidence did not present information that the court was not already aware of. Thus, the court made the reasonable decision, based on the facts before it, to deny L.D.D.'s motion without reviewing the records or hearing testimony by L.D.D. about her mental health issues at the time of the September 23 and October 4 hearings.

## CONCLUSION

¶36     For the reasons stated, I affirm the circuit court's orders terminating L.D.D.'s parental rights to her child and denying her motion to vacate the default judgment.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.