299 P.3d 756

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Stephen CRAMER, Jr., Petitioner/Defendant–Appellant.**

**No. SCWC–11–0000085.**

Supreme Court of Hawai'i.

April 29, 2013.

Hayden Aluli, for petitioner.

Artemio C. Baxa, for respondent.

RECKTENWALD, C.J., NAKAYAMA, McKENNA, and POLLACK, JJ., with ACOBA, J., concurring separately, with whom POLLACK, J., joins.

Opinion of the Court by
RECKTENWALD, C.J.

Stephen Cramer, Jr. was found guilty of several drug-related offenses following his termination from the Drug Court program. At his sentencing hearing approximately two months later, Cramer was represented by a court-appointed deputy public defender. Privately retained counsel also appeared on behalf of Cramer, and sought to substitute for the deputy public defender "provided that

[he was] given the opportunity to properly prepare." Cramer's privately retained counsel requested a three week continuance to prepare.

The Circuit Court for the Second Circuit denied Cramer's motion for substitution of counsel and a continuance as untimely.[1] The deputy public defender represented Cramer for the duration of the hearing. The circuit court eventually continued the sentencing hearing for five days, apparently to obtain additional information with regard to whether Cramer was eligible for a sentence of probation under Hawai'i Revised Statutes (HRS) § 706–622.5, quoted *infra.*

At the continued sentencing hearing, Cramer was again represented by the deputy public defender. The circuit court determined that Cramer was not entitled to sentencing pursuant to HRS § 706–622.5. The circuit court then sentenced Cramer to a ten-year indeterminate term of incarceration for Promoting a Dangerous Drug in the Second Degree, a five-year term for Prohibited Acts Related to Drug Paraphernalia, and a thirty-day term for Promoting a Detrimental Drug in the Third Degree, all terms to run concurrently.

Cramer's privately retained counsel was subsequently permitted to substitute for the deputy public defender. Cramer appealed the circuit court's judgment of conviction and sentence, arguing, inter alia, that the circuit court violated his constitutional right to counsel of his choice when it denied his motion for substitution of counsel and a continuance of the sentencing hearing. The ICA determined that the circuit court did not abuse its discretion in denying Cramer's motion, and

accordingly affirmed the circuit court's judgment. *State v. Cramer,* No. CAAP–11–0000085, 127 Hawai'i 241, 2012 WL 1560671, at *2 (App. May 3, 2012) (Summary Disposition Order).

In his application to this court, Cramer again argues that the circuit court violated his constitutional right to counsel of his choice when it denied his motion. We agree that Cramer was denied his right to privately retained counsel of his choice under article I, section 14 of the Hawai'i constitution. We also hold that the circuit court abused its discretion in denying the motion for substitution of counsel and continuance of the hearing. Specifically, the circuit court relied only on the timeliness of the request, and the record does not reflect that the circuit court properly balanced Cramer's right to counsel of his choice against countervailing government interests. Accordingly, we vacate the ICA's June 1, 2012 judgment and the circuit court's January 11, 2011 judgment, and remand to the circuit court for resentencing.

## I. Background

The following factual background is taken from the record on appeal.

### A. Circuit Court Proceedings

On November 9, 2007, Cramer was charged with Promoting a Dangerous Drug in the Second Degree, in violation of HRS § 712–1242(1)(b)(i)[2] (Count One), Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329–43.5(a)[3] (Count Two), and Promoting a Detrimental Drug in the Third Degree, in violation of HRS § 712–1249(1)[4]

---

1. The Honorable Shackley F. Raffetto presided.

2. HRS § 712–1242(1)(b)(i) (Supp.2007) provides:

 A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly ... [p]ossesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of ... [o]ne-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers[.]

3. HRS § 329–43.5(a) (1993) provides:

 It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia

to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. HRS § 712–1249(1) (1993) provides:

 A person commits the offense of promoting a detrimental drug in the third degree if the

(Count Three), in relation to an incident on September 19, 2007, when officers executed a search warrant on Cramer's vehicle and discovered crystal methamphetamine and other drug paraphernalia.

On February 25, 2009, Cramer filed a Petition for Admission to Drug Court and Waiver of Rights; Admission Agreement (Petition), in which he admitted to the charged offenses. He acknowledged that the State would prosecute him if he did not successfully complete the Drug Court Program, and that he would be tried without a jury. At a February 25, 2009 hearing, the circuit court granted Cramer's Petition and admitted him into the Drug Court program.[5]

On July 21, 2010, the State filed a motion to terminate Cramer's participation in the Maui Drug Court Program because Cramer failed to comply with the terms and conditions of the program, specifically conditions A and B of the Drug Court Program Admission Agreement.[6]

A hearing was held on the State's motion, with Cramer represented by Deputy Public Defender (DPD) Danielle Sears, and on September 3, 2010, the circuit court filed an order granting the State's motion to terminate Cramer's participation in Drug Court. On November 4, 2010, the circuit court held a stipulated facts trial. The circuit court admitted Cramer's Petition into evidence, found Cramer guilty as charged on all three counts, and set sentencing for January 6, 2011. In the interim, Cramer was free on $100,000 bail.

At the start of the scheduled January 6, 2011 sentencing hearing, the following exchange occurred:

> [DPD] SEARS: Good morning, Your Honor. Danielle Sears, Deputy Public Defender on behalf of [ ] Cramer.
>
> THE COURT: Good morning.
>
> [DPD] SEARS: There has been a development.
>
> [ ] ALULI: Good morning, Your Honor. Hayden Aluli on behalf of [ ] Cramer. If I may, Your Honor, I would move to substitute for [DPD] Danielle Sears provided that I'm given the opportunity to effectively prepare. And I'm asking for three weeks continuance of these proceedings, Your Honor. I've spoken with the prosecution. And if there needs to be discussion, we can approach the bar.
>
> THE COURT: No. We can do it on record. What is your position on it?
>
> [DPA]: Your Honor, the State is ready for sentencing today.
>
> THE COURT: All right. We're going to go ahead today. So I'll deny your motion. Thank you. It's untimely. Thank you.

DPD Sears then informed the circuit court that she had received a presentence investigation report and a Substance Abuse Assessment of Cramer, and wanted to know whether the court had also received the Substance Abuse Assessment. The circuit court stated it did not receive the Substance Abuse Assessment, but wanted to review it to assess whether Cramer qualified for sentencing under "Act 44."[7] The circuit court also noted

---

person knowingly possesses any marijuana or any Schedule V substance in any amount.

5. Cramer was represented at the hearing by privately retained counsel Christopher Dunn. It appears that Dunn was permitted to withdraw as Cramer's counsel at a July 14, 2010 hearing, and the Office of the Public Defender was appointed to represent Cramer.

6. Conditions A and B of the Maui Drug Court Program Admission Agreement, which Cramer agreed to, provided:

A. I will commit myself to full participation in the Maui Drug Court Program ("Drug Court") toward the goal of remaining clean and sober for the rest of my life.

B. I will give truthful answers to any questions asked by the Drug Court Judge ("Court") and the Drug Court staff including any treatment providers to whom I am referred by the Drug Court staff. Honesty is of critical importance, and my truthful answers may help determine the type of treatment that is best for me.

7. HRS § 706-622.5 (Supp. 2007), commonly referred to as Act 44, provides, inter alia, that persons convicted for the first time for certain specified drug offenses may be sentenced to probation if the court determines that the person is nonviolent, has been assessed by a certified substance abuse counselor to be in need of substance abuse treatment, and has presented a proposal to receive substance abuse treatment.

that Cramer had a protective order entered against him in 2008 and convictions for violations of temporary restraining orders, and stated that it needed more information about those incidents before it made a determination as to whether Cramer was nonviolent and therefore qualified for sentencing under Act 44.

The deputy prosecuting attorney then stated, "Can we ask for a continuance." The circuit court responded, "I would like to continue this, but not more than a week." The circuit court also reiterated that it did not receive the Substance Abuse Assessment, which was a "critical determination in this case." The circuit court continued the sentencing until January 11, 2011.

DPD Sears appeared on behalf of Cramer at the January 11, 2011 sentencing hearing. The circuit court denied probation under Act 44, and sentenced Cramer to incarceration for ten years on count one, five years on count two, and thirty days on count three, all terms to run concurrently. The circuit court filed its Judgment of Conviction and Sentence on January 11, 2011.

On February 3, 2011, the circuit court approved the withdrawal of DPD Sears and the substitution of Aluli as Cramer's counsel. Cramer, through Aluli, filed a notice of appeal.

On March 21, 2011, Cramer, through Aluli, filed in the circuit court a Motion to Reduce Sentence pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 35(b).[8] On April 7, 2011, at a hearing on Cramer's motion to reduce sentence, the circuit court concluded

that Cramer "needs to have the consequences of his behavior to finally understand that he needs to change." Accordingly, the circuit court denied Cramer's motion to reduce sentence.

**B. ICA Appeal**

In his opening brief, Cramer asserted that the trial court committed reversible error in denying his motion for substitution of counsel and for a continuance of the sentencing proceeding, in violation of his constitutional right to counsel of his choice. Although Cramer acknowledged that trial courts are given "wide discretion" in determining whether to grant a continuance, he contended that the circuit court abused its discretion because it "simply said that the motion was untimely and failed to engage in weighing Cramer's constitutional right to a reasonable delay of sentencing against the needs of fairness and the demands of its calendar." (Citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006)).[9]

In its answering brief, the State argued that the circuit court properly exercised its discretion in denying Cramer's motion because the request for substitution of counsel was "tentative and conditional" upon the granting of a three-week continuance. In addition, the State asserted that Cramer "made no representation that he was dissatisfied or had lost confidence in [DPD Sears] or that he had discharged present counsel, and that he wanted or had retained [ ] Aluli as his new counsel." The State, citing *State v. Torres*, 54 Haw. 502, 510 P.2d 494 (1973),[10]

2004 Haw. Sess. Laws Act 44, § 11 at 214. Pursuant to HRS § 706–622.5(4), if a defendant successfully completes the substance abuse treatment program and complies with other terms and conditions of probation, then the court "shall issue a court order to expunge the record of conviction for that particular offense."

8. HRPP Rule 35(b) (2011) provides in relevant part: "The filing of a notice of appeal shall not deprive the court of jurisdiction to entertain a timely motion to reduce a sentence."

9. Cramer also asserted that the circuit court abused its discretion in failing to sentence him to probation as a first-time drug offender under HRS § 706–622.5. The ICA concluded: "Based on the family court's finding that Cramer had engaged in family violence, the circuit court de-

termined it could not conclude that Cramer was nonviolent as required under HRS § 706–622.5. Because Cramer was not eligible to be sentenced to probation, the circuit court did not err in refusing to sentence Cramer under HRS § 706–622.5." *Cramer*, 2012 WL 1560671, at *2. Cramer does not challenge this determination in his application. However, as discussed further below, we conclude that Cramer can argue for any potentially applicable sentence (including sentencing under Act 44) on remand, since the denial of counsel of choice at his original hearing was structural error.

10. As discussed further *infra*, in *Torres*, this court determined that the trial court's substitution of counsel on the eve of trial and subsequent denial of a continuance did not deprive the defendant of

argued that in denying Cramer's motion, it was "apparent that the [circuit] [c]ourt was concerned about the orderly flow of business in the court system."

Cramer filed a reply brief and argued, inter alia, that the State provided no support for its contention that he needed to justify his assertion of the right to private counsel of his choice, and that *Torres* was distinguishable because it involved a claim of ineffective assistance of counsel.

In its May 3, 2012 SDO, the ICA determined, inter alia:

> Here, Cramer was represented by counsel from the public defender's office at the Drug Court termination hearing on August 19, 2010 and the Stipulated Facts trial on November 4, 2010. Not until the sentencing hearing on January 6, 2011 did other counsel make an appearance and request substitution, contingent on the circuit court's willingness to continue the hearing for three weeks. Cramer provided no reason for the request for new counsel and, on appeal, has not argued he was prejudiced by the court's denial of a continuance to accommodate appointment of new counsel. We conclude the circuit court did not abuse its discretion in denying Cramer's oral motion for substitution of counsel and a continuance.

*Cramer*, 2012 WL 1560671, at *1.

Accordingly, the ICA affirmed the circuit court's Judgment of Conviction and Sentence and subsequently entered its Judgment on Appeal on June 1, 2012. Cramer timely filed an application for writ of certiorari and the State timely filed its response.

## II. Standard of Review

With regard to a motion for substitution, this court has stated that:

> the right to counsel of choice is qualified, and can be outweighed by countervailing governmental interests. But in light of the right to counsel, and in the absence of countervailing considerations, a criminal

defendant should have his, her, or its choice of privately retained counsel. . . . Whether a change in counsel should be permitted . . . rests in the sound discretion of the trial court.

*State v. Maddagan*, 95 Hawai'i 177, 180, 19 P.3d 1289, 1292 (2001) (citations and quotation marks omitted).

 In addition, "a motion for continuance is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a showing of abuse of that discretion." *State v. Lee*, 9 Haw.App. 600, 603, 856 P.2d 1279, 1281 (1993). "Generally, to constitute an abuse, it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Crisostomo*, 94 Hawai'i 282, 287, 12 P.3d 873, 878 (2000) (internal quotation marks, citation, and brackets omitted).

## III. Discussion

### A. The circuit court abused its discretion in denying Cramer's motion for substitution of counsel and a continuance of the sentencing hearing

 Cramer asserts that pursuant to the Sixth Amendment of the United States Constitution and article I, section 14 of the Hawai'i Constitution, he was entitled to privately retained counsel of his choice, and that the circuit court abused its discretion in denying his motion for substitution of counsel and a continuance. As explained below, we conclude that Cramer was denied his right to privately retained counsel of his choice under the Hawai'i constitution.

Article I, section 14 of the Hawai'i Constitution provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for the accused's defense." We have interpreted this provision to guarantee a criminal defendant's right to privately retained counsel of his or her choice. *Maddagan*, 95

---

his constitutional right to the effective assistance of counsel. 54 Haw. at 503, 507, 510 P.2d at 496–97. This court articulated a test to balance the need for counsel to have adequate time to

prepare with "due consideration for the orderly administration of justice[.]" *Id.* at 505–06, 510 P.2d at 496–97.

Hawaiʻi at 180, 19 P.3d at 1292 ("On independent state constitutional grounds, we also recognize that the right to counsel in article I, section 14 of the Hawaiʻi Constitution encompasses a right to privately retained counsel of choice.").

In *Maddagan*, the circuit court denied the defendant's motion to withdraw his guilty plea, made through new counsel, because no motion to withdraw or substitute counsel was filed. *Id.* at 178, 19 P.3d at 1290. Attached to defendant's motion was his affidavit that stated that he was authorizing his new counsel, Earle A. Partington, to represent him on the motion. *Id.* On appeal, this court recognized that article I, section 14 of the Hawaiʻi Constitution "encompasses a right to privately retained counsel of choice[,]" but that "the right to counsel of choice is *qualified*, and can be *outweighed* by countervailing governmental interests." *Id.* at 180, 19 P.3d at 1292 (emphasis added and citation omitted). This court determined that the circuit court had discretion to allow the substitution of Partington and that the defendant should have been given a hearing to advocate for the substitution. *Id.* at 182, 19 P.3d at 1294.

■ It is clear from *Maddagan* that a criminal defendant has a constitutional right under article I, section 14 of the Hawaiʻi Constitution to privately retained counsel of his or her choice. This right, however, must be balanced against countervailing governmental interests. *See Maddagan*, 95 Hawaiʻi at 180, 19 P.3d at 1292 ("[T]he right to counsel of choice is qualified, and can be outweighed by countervailing governmental interests.") (citation omitted); *cf. Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (holding that federal courts "must recognize a <u>presumption</u> in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict [of interest] but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court") (emphasis added).

This court has not had occasion to examine the countervailing governmental interests that should be balanced against the right to counsel of choice. However, other jurisdictions have identified several factors that can be relevant in making such a determination. *See, e.g., People v. Butcher*, 275 Cal.App.2d 63, 79 Cal.Rptr. 618, 621 (1969) (in considering motions to substitute counsel and to continue made on the day of trial, the trial court should have considered: (1) length of the continuance; (2) whether there was a dilatory motive for the continuance; (3) whether the prosecution knew of the motions beforehand and whether the prosecution objected; (4) whether the delay would have inconvenienced the prosecution or its witnesses; (5) whether current court-appointed counsel was prepared to proceed; (6) whether the defendant had already retained private counsel; and (7) whether the continuance would interfere with the efficient administration of justice).

In *State v. Prineas*, 316 Wis.2d 414, 766 N.W.2d 206, 212 (Wis.Ct.App.2009), the defendant in a sexual assault prosecution hired privately retained counsel and filed a motion for his present attorney to withdraw, to substitute counsel, and for a continuance one week before the trial date. 766 N.W.2d at 210. The court held a hearing in which the State argued that the complaining witness and her family wanted the case to "be done so she could get on with her life." *Id.* The court stated that it would not grant the request so close to trial unless it was given "some extraordinary reason" other than a desire to change counsel, but none was offered by defense counsel. *Id.* at 214–15. Accordingly, the court denied the motion. *Id.* On appeal, the defendant argued, inter alia, that he was denied his right to private counsel of his choice. *Id.* at 212.

The Wisconsin Court of Appeals held that decisions relating to substitution of counsel were within the sound discretion of the trial court, and noted that when making its determination to grant or deny a request for substitution of counsel of choice, the trial court needed to balance the defendant's request against "the public's interest in the prompt and efficient administration of justice." *Id.* The appellate court listed several examples of factors that "assist the court in

balancing the relevant interests," including: the length of the delay requested, whether competent counsel was presently available and prepared to try the case, whether prior continuances have been requested and received by the defendant, the inconvenience to the parties, witnesses and the court, and whether the delay was for legitimate reasons or whether its purpose was dilatory. *Id.* The appellate court determined that the trial court properly balanced the request against the "public's interest in the prompt and efficient administration of justice." *Id.* at 215 (citation omitted). The appellate court determined:

> Several factors weigh in favor of the court's exercise of its discretion, for example: [the defendant] did not specify the length of delay that would be required; he did not dispute his current counsel's ability to try the case; the court considered the inconvenience to the court and the concerns of the victim; and [the defendant] provided no reason for substitution and the accompanying delay.

*Id.*

Accordingly, upon consideration of multiple factors, the Wisconsin Court of Appeals affirmed the trial court's denial of the defendant's request for substitution of counsel and a continuance. *Id.* at 215, 219.

In the instant case, the circuit court merely considered one factor—timeliness of the request—in making its determination to deny the motion for substitution and a continuance. The record does not reflect that the circuit court considered, for example, the length of the delay requested, the impact of the delay on the prosecution, witnesses or the court, and whether the delay was for a dilatory purpose.

Consideration of those other factors supports the conclusion that the circuit court abused its discretion in denying the motion for substitution and a continuance. The State took no position on the request and there was no apparent prejudice to the State. The record does not establish that the circuit court would have been inconvenienced by the request, particularly given that it subsequently ordered a one-week continuance of the sentencing hearing. The record

also does not establish that there were witnesses present at the initial hearing who would be inconvenienced by a continuance. Furthermore, there had been only one prior continuance in the proceeding, which was a stipulated continuance of the trial from September 16, 2010 to November 4, 2010. Under the circumstances, the court's summary denial of the motion for substitution and a continuance as untimely was an abuse of discretion.

Although the ICA relied on *Torres* in affirming Cramer's sentence in the instant case, *Torres* is distinguishable. There, on the day before trial on a burglary charge, Richard Torres asked the court for the appointment of new counsel. 54 Haw. at 502–03, 510 P.2d at 495. The circuit court dismissed the original attorney and appointed Torres's chosen attorney, Mr. Hall. *Id.* Both Torres and Hall moved for a continuance so that Hall could prepare for trial. *Id.* The circuit court denied the motions because the jury was waiting to be impaneled and there had been several continuances leading up to trial. *Id.* at 503, 510 P.2d at 495–96. Hall went to trial less than twenty-four hours later. *Id.* at 504, 510 P.2d at 496.

On appeal to this court, Torres argued that he was denied his constitutional right to the effective assistance of counsel. *Id.* at 503, 510 P.2d at 495. This court held,

> Generally, any request for continuance is to be disposed of in the discretion of the trial judge. A denial of a continuance is not per se a denial of the constitutional right to counsel, but the appellate court should scrupulously review the record to determine whether, under all the circumstances, there was an abuse of discretion that prejudiced the defendant by amounting to an unconstitutional denial of the right toi [sic] effective assistance of counsel.

*Id.* at 504–05, 510 P.2d at 496.

This court determined that Torres was not denied the effective assistance of counsel. *Id.* at 57, 510 P.2d at 498. This court found no deficiencies in Hall's performance at trial, Hall had complete access to notes from the prosecution's and Dwight's files, and Torres

did not request a change of counsel until the very moment of trial and therefore was to blame for the tardiness of the request for new counsel. *Id.* at 507, 510 P.2d at 497–98.

*Torres* is distinguishable. *Torres* involved a claim of ineffective assistance of counsel <u>after</u> the circuit court granted a motion for substitution and after it denied Torres's motion for a continuance of trial. 54 Haw. at 503, 510 P.2d at 495. Here, the issue is whether the circuit court violated the defendant's constitutional right to counsel of choice and thus, erred in denying a motion to substitute counsel. Put another way, this court need not analyze this case for ineffectiveness of counsel because substitute counsel was not appointed.

Cramer also asserts that the ICA's determination that "Cramer provided no reason for the request for new counsel and, on appeal, has not argued he was prejudiced by the court's denial of a continuance to accommodate appointment of new counsel" was inconsistent with *Gonzalez–Lopez*. *Cramer*, 2012 WL 1560671, at \*1. The ICA's determination is indeed inconsistent with *Gonzalez–Lopez*.

In *Gonzalez–Lopez*, the defendant, Cuauhtemoc Gonzalez–Lopez, was charged in the Eastern District of Missouri with conspiracy to distribute more than 100 kilograms of marijuana. 548 U.S. at 142, 126 S.Ct. 2557. His family hired an attorney to represent him. *Id.* Gonzalez–Lopez later called a California attorney, Joseph Low, to represent him. *Id.* Although the district court initially permitted Low's provisional entry of appearance, it subsequently revoked the provisional acceptance and did not allow participation or representation by Low, Gonzalez–Lopez's counsel of choice. *Id.*

On appeal, the issue before the Court was whether a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitled him to reversal of his conviction. *Id.* The prosecution did not dispute that Gonza-lez–Lopez was erroneously deprived of his counsel of choice. *Id.* at 144. The Court determined that the erroneous deprivation of Gonzalez–Lopez's counsel of choice required reversal of the conviction. *Id.* at 151–52. The Court determined that no additional showing of prejudice was required when a defendant's Sixth Amendment right to counsel of his choice was violated: "[d]eprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* at 148. The Court reaffirmed its holding that the right to counsel of choice was "limit[ed]" and needed to be "balanc[ed]" "against the needs of fairness, and against the demands of [the court's] calendar," but concluded that that consideration was not relevant to Gonzalez–Lopez's case because the prosecution "conceded that the [court] here erred when it denied [Gonzalez–Lopez] his choice of counsel." *Id.* at 151–52 (citations omitted).

■ In addition, the Court held that the denial of the right to counsel of choice was a "structural error" not subject to a harmless error analysis.[11] 548 U.S. at 150, 126 S.Ct. 2557. Furthermore, the Court determined, "[i]t is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings." *Id.* Similarly, requiring Cramer to argue that he was "prejudiced" by the denial of the continuance to accommodate the appointment of new counsel would require us to speculate as to how Aluli would have represented Cramer at the sentencing hearing, an inquiry that was rejected in *Gonzalez–Lopez*. For the same reasons, Cramer is free to argue on remand that he should be sentenced to probation pursuant to Act 44, or any other potentially applicable sentence.

---

11. Structural errors affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Ortiz*, 91 Hawai'i 181, 193, 981 P.2d 1127, 1139 (1999) (citing *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)); *State v. Swanson*, 112 Hawai'i 343, 353, 145 P.3d 886, 896 (App.2006). As the concurring opinion observes, there have been criticisms of the decision in *Fulminante*. *See* Concurring Opinion at 12–20. Respectfully, however, we need not resolve those concerns here because they would not affect the result in the instant case. *See* Concurring Opinion at 1.

Accordingly, the circuit court abused its discretion in denying the motion for substitution and a continuance.

## IV. Conclusion

We hold that the circuit court abused its discretion in denying the motion for substitution of counsel and continuance of the hearing. Thus, we vacate the ICA's June 1, 2012 judgment and the circuit court's January 11, 2011 judgment, and remand to the circuit court for resentencing.

Concurring Opinion by ACOBA, J., with whom POLLACK, J., joins.

I concur in the vacation and remand of this case,[1] but for the reasons set forth herein, because, pursuant to the Hawai'i constitution, some rights are so fundamental that they are not subject to a separate harmless error analysis. The approach set forth by the United States Supreme Court in *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), and its progeny, based on a dichotomy between "trial" and "structural" error, may be of diminishing viability. Instead, reliance should be placed on the Hawai'i constitution and our case law for guidance in deciding whether a particular right is so fundamental that its violation can never be harmless.

1. The majority concludes that the denial of counsel to Petitioner/Defendant–Appellant Stephen Cramer, Jr. (Cramer) was "structural error." Majority's opinion at 303, 299 P.3d at 763. As a result, the majority concludes that the judgment imposed by the Circuit Court for the Second Circuit (the circuit court) must be vacated, and on remand, Cramer can argue for any potentially applicable sentence. *Id.* at 304, 299 P.3d at 764.

2. In *Suka*, the ICA addressed a defendant's allegation that a particular remark made by the prosecution constituted prejudicial misconduct, and, as a result, the trial court erred in denying the defendant's motion to reopen the evidence, for mistrial, to dismiss the charges, and for a new trial. 79 Hawai'i at 297, 901 P.2d at 1276. The ICA agreed with the trial court that the statement was improper, and considered whether the judgement must be set aside as a result of the improper statement. *Id.* *Suka*'s four part categorization was part of that court's consider-

### I.

#### A.

*State v. Suka*, 79 Hawai'i 293, 901 P.2d 1272 (App.1995), *cert. denied*, 79 Hawai'i 341, 902 P.2d 976 (1995), sets forth the categories Hawai'i courts have developed through case law in addressing harmless error.[2] *Id.* at 298, 901 P.2d at 1277. There are four "fairly distinct" categories of cases discussed in *Suka*:

> First, are those cases involving federal and/or state "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error[.]" *Chapman v. California*, 386 U.S. 18, 23 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967). *Accord State v. Silva*, 78 Hawai'i 115, 121, 890 P.2d 702, 708 (App.1995) [,] [*abrogated on other grounds by Tachibana v. State*, 79 Hawai'i 226, 231–32, 900 P.2d 1293, 1298–99 (1995) ] (right to impartial judge). Second, are those cases involving the violation of all other federal and/or state constitutional rights which the appellate court must find to have been harmless beyond a reasonable doubt before they can be deemed harmless. *Chapman*, 386 U.S. at 24 [87 S.Ct. 824]; *State v. Okumura*, 58 Haw. 425, 431, 570 P.2d 848, 853 (1977); *State v. Pokini*, 57 Haw. 26, 29, 548 P.2d 1402, 1405, *cert. denied*, 429 U.S. 963 [97 S.Ct. 392, 50 L.Ed.2d 332] (1976); *Silva*, 78 Hawai'i at 125, 890 P.2d at 712. Third, are

ation of what standard to apply under Hawai'i Rule of Penal Procedure (HRPP) Rule 52(a), wherein it noted that "an array of standards [have been] employed." *Id.* After reviewing the various standards, *Suka* reasoned that, "[w]e are not confronted here with the claim that the prosecutor's argument violated any specific constitutional rights of [the d]efendant." *Id.* at 299, 901 P.2d at 1278. Instead, *Suka* concluded, "to determine whether reversal is required under HRPP Rule 52(a) because of improper remarks by a prosecutor which could affect [the d]efendant's right to a fair trial, we apply the harmless beyond a reasonable doubt standard of review." *Id.* at 301, 901 P.2d at 1280. Applying the standard, the ICA determined that, "[i]n light of the brevity of the prosecutor's remark, the oral and written admonitions to the jury to matters ordered stricken by the court, and the evidence presented at trial, we conclude that there was no reasonable possibility that the prosecutor's improper statement contributed to the conviction." *Id.* at 303, 901 P.2d at 1282.

those cases involving a limited number of rights, not of constitutional magnitude, but the violation of which has been deemed never to be harmless. *E.g. State v. Carvalho*, 79 Hawai'i 165, 880 P.2d 217 (App.[1994] ), *cert. granted*, 77 Hawai'i 373, 884 P.2d 1149 (1994), *cert. dismissed*, 78 Hawai'i 474, 896 P.2d 930 (1995) (peremptory challenges). Finally, there are those errors not of constitutional magnitude which may be deemed harmless unless the violation substantially affected the verdict or outcome of the case. *Kotteakos v. United States*, 328 U.S. 750 [66 S.Ct. 1239, 90 L.Ed. 1557] (1946); *State v. Arnold*, 66 Haw. 175, 657 P.2d 1052 (1983); *State v. Toro*, 77 Hawai'i 340, 347, 884 P.2d 403, 410, *reconsideration denied*, 77 Hawai'i 340, 884 P.2d 403 (App.[1994] ), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994). *Id.* (emphasis added).

Relevant to this case is the first category discussed in *Suka*, namely, "those cases involving federal and/or state 'constitutional rights so basic to a fair trial that their infraction can *never be treated as harmless* error[.]' " *Id.* (emphasis added) (quoting *Chapman*, 386 U.S. at 23, 87 S.Ct. 824). This first category has been affirmed by this court. *See State v. Mundon*, 121 Hawai'i 339, 382, 219 P.3d 1126, 1169 (2009) (Acoba, J., concurring and dissenting) ("Hawai'i courts have recognized that the Hawai'i constitution protects certain rights 'so basic to a fair trial that [their] contravention can never be deemed harmless.' ") (quoting *State v. Holbron*, 80 Hawai'i 27, 32 n. 12, 904 P.2d 912, 917 n. 12 (1995)).[3] Hawai'i courts have applied this "never harmless" standard in the context of other constitutional rights. *See, e.g., Silva*, 78 Hawai'i at 121, 890 P.2d at 708 (holding that an error with respect to the right to have an impartial tribunal, "by definition, is inherently prejudicial and not harmless"); *Bowe*, 77 Hawai'i at 56, 881 P.2d at 543 (recognizing that, under the Hawai'i constitution, admitting coerced confessions is "fundamentally unfair"); *State v. Chow*, 77 Hawai'i 241, 251, 883 P.2d 663, 673 (App. 1994) ("[W]e doubt that the denial of presentence allocution can ever be harmless error.").

*Suka* also recognized that some other "specific constitutional right[s] [ ] ostensibly requir[e] the application of the 'harmless beyond a reasonable doubt standard.' " *Suka*, 79 Hawai'i at 299, 901 P.2d at 1278; *see Chapman*, 386 U.S. at 24, 87 S.Ct. 824. Further, even where the rights at issue are not of constitutional magnitude, this court has evinced a preference for the harmless beyond a reasonable doubt standard. *Holbron* stated that "[t]o the extent that the language in *Suka* implies a standard of review under [ ] HRPP Rule 52(a) other than 'harmless beyond a reasonable doubt,' we expressly disapprove and overrule it." 80 Hawai'i at 32 n. 12, 904 P.2d at 917 n. 12. *State v. Malufau*, 80 Hawai'i 126, 906 P.2d 612 (1995), discussed *Suka*'s holding with respect to the harmless error standard under HRPP Rule 52, and concluded that "[b]ecause a defendant may not be convicted of an offense except upon proof establishing his or her guilt beyond a reasonable doubt, we question whether a standard more lenient than the harmless beyond a reasonable doubt standard is ever appropriate in criminal cases." 80 Hawai'i at 130–31, 906 P.2d at 616–17. *Malufau* appeared to draw a distinction between the harmless beyond a reasonable doubt standard and the harmless error standard, and ultimately declined to resolve the issue. *Id.* at 131, 906 P.2d at 617. However, neither *Holbron* nor *Malufau* disputed *Suka*'s analysis with respect to the other categories of

---

3. *Holbron* recognized that, "[i]n *Suka*, [ ] the ICA acknowledged that this court has viewed certain rights protected by the Hawai'i constitution to be 'so basic to a fair trial that [their] contravention can never be deemed harmless,' [*Suka*, 79 Hawai'i at 298, 901 P.2d at 1277] [ []citing [ ] *Bowe*, 77 Hawai'i 51, 881 P.3d [P.2d] 538[ ] (holding that use of a coerced confession in a criminal trial would be fundamentally unfair)[] ], as an example." *Holbron*, 80 Hawai'i at 32 n. 12, 904 P.2d at 917 n. 12. *Holbron* commented on another of *Suka's* categories, specifically the fact that *Suka* recognized "a class of errors in criminal cases 'not of constitutional magnitude which may be deemed harmless unless the violation substantially affected the verdict or outcome of the case.' " *Id.* (quoting *Suka*, 79 Hawai'i at 298, 901 P.2d at 1277). In doing so, *Holbron* implicitly affirmed the other categories set forth in *Suka*, including the first category of rights that can "never be deemed harmless." *Id.* (quoting *id.*).

errors. *See Suka*, 79 Hawai'i at 298, 901 P.2d at 1277.

### B.

### 1.

Suka also acknowledged that, in *Fulminante*, the United States Supreme Court had adopted a two category approach to harmless error review, identifying errors as either "trial errors" or "structural errors." *Id.* In *Fulminante*, Justice White delivered the opinion of the Court with respect to, *inter alia*, Part I, and stated that the appeal arose from the Arizona Supreme Court's ruling that admission of a coerced confession at trial against the defendant in violation of the Fifth and Fourteenth Amendments to the United States Constitution was error, but harmless. 499 U.S. at 284–85, 111 S.Ct. 1246. On the defendant's motion for reconsideration, however, the Arizona court determined that United States Supreme Court precedent, specifically *Chapman*, precluded the use of harmless error analysis where a coerced confession had been introduced. *Id.* A majority of justices on the United States Supreme Court, 5–4, agreed with Justice White that the confession had in fact been coerced. *Id.* at 287, 111 S.Ct. 1246.

However, with respect to whether harmless error applied to admission of the confession, the court split 5–4 again, but this time, Chief Justice Rehnquist wrote for this majority, in Part II of his opinion.[4] *Id.* at 302, 111 S.Ct. 1246. The Chief Justice held that the harmless beyond a reasonable doubt rule governed introduction of a coerced confession. *Id.* at 310, 111 S.Ct. 1246. According to Chief Justice Rehnquist, "trial error" is defined as "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. 1246. "Structural error" on the other hand, was defined as a "structural defect affecting the

framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. 1246. "Structural errors" implicate protections that allow a criminal trial to "serve its function as a vehicle for determination of guilt or innocence, and [without which] no criminal punishment may be regarded as fundamentally fair." *Id.*

Having established this framework, Chief Justice Rehnquist concluded that "constitutional structural errors are per se reversible whereas constitutional trial errors are reversible if they are not harmless beyond a reasonable doubt." *Suka*, 79 Hawai'i at 299, 901 P.2d at 1278 (citing *Fulminante*, 499 U.S. at 309, 111 S.Ct. 1246). This proposition is applicable to both constitutional violations that occur at trial and those that occur at sentencing. *Sullivan v. Louisiana*, 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (Rehnquist, C.J., concurring). Applying this formula, the majority held that the coerced confession was a " 'classic trial error' subject to the harmless beyond a reasonable doubt standard." *Id.* (quoting *Fulminante*, 499 U.S. at 309, 111 S.Ct. 1246) (internal quotation marks omitted). In coming to this conclusion, this majority noted that "the admission of an involuntary confession is [not] the type of error which 'transcends the criminal process.' " *Id.* Having concluded that harmless error analysis applied to coerced confessions, the Chief Justice held that "the State has failed to meet its burden of establishing, beyond a reasonable doubt, that the admission of Fulminante's [coerced] confession ... was harmless error." *Id.* at 297, 113 S.Ct. 2078.

The four dissenting justices would have held that the harmless error analysis did not apply, and that such an error should never be subject to harmless error analysis. *Id.* at 295, 113 S.Ct. 2078 (White, J., dissenting). The dissent stated that, "the majority concedes, ... prior cases 'have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never

---

4. In *Fulminante*, Justice White's opinion had the majority of votes with respect to Parts I, III, and IV of his opinion, and Part II of his opinion was a dissent. Chief Justice Rehnquist had the majority of votes with respect to Part II of his opinion, and Parts I, III, and IV of his opinion was a dissent.

be treated as harmless error[.]' " *Id.* at 289–90, 113 S.Ct. 2078 (quoting *Chapman,* 386 U.S. at 23, and n. 8, 87 S.Ct. 824) (emphasis in original). In Justice White's view, " 'certain constitutional rights are not, and should not be, subject to harmless error analysis because those rights protect important values that are unrelated to the truth-seeking function of trial.' " *Id.* at 295, 113 S.Ct. 2078 (quoting *Rose v. Clark,* 478 U.S. 570, 587, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (Stevens, J., concurring)).

As examples of errors implicating such constitutional rights, the dissent listed, *inter alia,* the right to counsel at trial (*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), unlawful exclusion of members of the defendant's race from the grand jury that indicted him (*Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)), a judge with a financial interest in the outcome (*Tumey v. Ohio,* 273 U.S. 510, 535, 47 S.Ct. 437, 71 L.Ed. 749 (1927)), and a violation of the guarantee of a public trial (*Waller v. Georgia,* 467 U.S. 39, 49, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)), which "required reversal <u>without any showing of prejudice</u> and even though the values of a public trial <u>may be intangible and unprovable in any particular case.</u>" *Fulminante,* 499 U.S. at 294–95, 111 S.Ct. 1246 (White, J., dissenting) (emphases added).

Justice White concluded that the right of the defendant not to have his coerced confession used against him was also "among those rights" because "using a coerced confession 'aborts the basic trial process' and 'renders' a trial *fundamentally unfair." Id.* (quoting *Rose,* 478 U.S. at 577, 106 S.Ct. 3101) (brackets omitted) (emphasis added). He pointed out that "ours is an accusatorial and not an inquisitorial system" and "permitting a coerced confession to be part of the evidence on which a jury is free to base its verdict of guilty is inconsistent with [that] thesis...." *Id.* at 293, 111 S.Ct. 1246 (citation omitted). Thus, the dissent considered the values un-

derlying the constitutional right, and concluded that use of a coerced confession against a criminal defendant should never be subject to harmless error analysis.[5] *Id.* at 295, 111 S.Ct. 1246.

### 2.

Construing *Fulminante, Suka* stated that, "[i]n considering claimed violations of federal constitutional rights, our appellate courts would be bound by the majority's holding in *Fulminante."* 79 Hawai'i at 298–99, 901 P.2d at 1277–78. However, *Suka* deemed that, "with respect to parallel provisions of the Hawai'i constitution, we would be free to adopt the [*Fulminante* ] dissent's rationale, if we believed the majority's opinion would lead to unsound results." *Id.* at 299, 901 P.2d at 1278. Thus, for future cases dealing with fundamental rights and harmless error under the Hawai'i constitution, *Suka* stated that,

[i]t is well-established that broader rights may be afforded to our citizens under our state constitution than under the federal constitution." [ ] *Chow,* 77 Hawai'i [at] 247, 883 P.2d [at] 669[ ]. *See State v. Hoey,* 77 Hawai'i 17, 36, 881 P.2d 504, 523 (1994). Clearly, the Hawai'i Supreme Court may declare a Hawai'i constitutional right so basic to a fair trial that its contravention can never be deemed harmless. *Silva,* 78 Hawai'i at 121, 890 P.2d at 708. For example, the Hawai'i Supreme Court has held that the use of a coerced confession in a criminal trial under the Hawai'i constitution would be fundamentally unfair. [ ] *Bowe,* 77 Hawai'i 51, 881 P.2d 538[ ].

*Id.* (emphasis added).

In *Bowe,* this court considered a question similar to that determined by *Fulminante,* namely, "[w]hether the coercive conduct of a private person is sufficient to render a confession involuntary." 77 Hawai'i at 54, 881 P.2d at 541. Instead of adopting federal constitutional confession law, *Bowe* determined that "independent considerations aris-

---

**5.** Justice White's reasoning with respect to using a coerced confession against a defendant in a criminal trial resonates with the instant case inasmuch as the *Fulminante* dissent states that "[t]he inability to assess its effect on a conviction causes the admission of a coerced confession to

defy analysis by harmless error standards, ... <u>just as certainly as do deprivation of counsel</u> and trial before a biased judge." *Fulminante,* 499 U.S. at 290, 111 S.Ct. 1246 (White, J., dissenting) (internal quotation marks and citation omitted) (emphasis added).

ing under article 1, sections 5 and 10 of the Hawai'i constitution compel us to hold that the coercive conduct of a private person may be sufficient to render a [d]efendant's confession involuntary." *Id.* at 57, 881 P.2d at 544. In so holding, this court employed the same language as the *Fulminante* dissent,[6] stating that "[w]e have also recognized a preference for an accusatorial system of justice, rather than an inquisitorial one, to ensure the reliability of our criminal law enforcement system." *Id.* at 58, 881 P.2d at 545 (emphasis added) (citation omitted). This court emphasized the importance of the right to due process, quoting Justice Brennan's dissent to *Colorado v. Connelly,* 479 U.S. 157, 175, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), in which he stated that, " '[t]he Fourteenth Amendment secures against state invasion ... the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will....' " *Bowe,* 77 Hawai'i at 59, 881 P.2d at 546 (quoting *Connelly,* 479 U.S. at 176, 107 S.Ct. 515 (Brennan, J., dissenting) (alterations in original)). *Bowe* also grounded its holding in the due process clause of the Hawai'i constitution, noting that "implicit in a 'fundamentally fair trial' is a right to make a meaningful choice between confessing and remaining silent.' " *Id.* at 59, 881 P.2d at 546 (quoting *State v. Matafeo,* 71 Haw. 183, 185, 787 P.2d 671, 672 (1990)). *Bowe* concluded that the admission of coerced admissions impinged on this right and thus was "fundamentally unfair." *Id.* This court stated,

> Accordingly, we recognize that an individual's capacity to make a rational and free choice between confessing and remaining silent may be overborne as much by the coercive conduct of a private individual as by the coercive conduct of the police. Therefore, we hold that admitting coerced confessions, regardless of the source of the coercion, is fundamentally unfair.

*Id.* (emphasis added). This holding follows the approach of the *Fulminante* dissent, and does not adhere to the rule employed by the *Fulminante* majority, which, as noted, held

that a coerced confession was subject to the harmless beyond a reasonable doubt standard. *Fulminante,* 499 U.S. at 309, 111 S.Ct. 1246. Under Hawai'i case law, then, a coerced confession is "fundamentally unfair" and thus "can never be deemed harmless." *See Mundon,* 121 Hawai'i at 382, 219 P.3d at 1169 (Acoba, J., concurring and dissenting).

## II.

The dichotomic approach adopted in *Fulminante* has not been strictly followed by the United States Supreme Court or lower federal courts, and has been criticized as "analytically flawed." *See* David McCord, *The "Trial"/"Structural" Error Dichotomy: Erroneous, and Not Harmless,* 45 U. Kan. L.Rev. 1401, 1401 (1996). Although since *Fulminante,* the Court has used the terms "trial error" and "structural error" in its analysis, it appears not to have wholly abandoned the approach set forth in *Chapman. See Chapman,* 386 U.S. at 22–23, 87 S.Ct. 824.

For example, in *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), an opinion authored by Justice Scalia, the Court appeared to focus on the nature of the underlying constitutional right. *See Sullivan,* 508 U.S. at 278–281, 113 S.Ct. 2078. There, the issue was whether a constitutionally deficient reasonable doubt jury instruction could constitute harmless error. *Id.* at 276, 113 S.Ct. 2078. The Court began its discussion of whether to apply harmless error by discussing the relevant constitutional provisions that were violated. *Id.* at 278, 113 S.Ct. 2078. Justice Scalia then went on to state that *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (*per curiam* ), had held that a jury instruction like the one given in *Sullivan* was unconstitutional and therefore could not produce a valid jury verdict of guilty beyond a reasonable doubt. *Sullivan,* 508 U.S. at 280, 113 S.Ct. 2078. Thus, he concluded, in *Sullivan,* "there was no jury verdict within the meaning of the Sixth Amendment," and therefore,

---

6. Although *Bowe* uses the same language as Justice White's dissenting opinion in *Fulminante, Bowe* does not quote or cite to *Fulminante. See Bowe,* 77 Hawai'i at 58, 881 P.2d at 545. Rather, it cites to Hawai'i case law for this proposi-

tion, which appears to have come from earlier United States Supreme Court opinions. *Id. See State v. Kelekolio,* 74 Haw. 479, 501 849 P.2d 58, 69 (citing *State v. Wakinekona,* 53 Haw. 574, 576, 499 P.2d 678, 680 (1972)).

"[t]here is no object, so to speak, upon which harmless-error scrutiny can operate." *Id.* (emphasis in original). In other words, because there was no valid verdict to review, there was no way to determine whether the jury's actual finding of guilty beyond a reasonable doubt would have been different. *Id.*

*Sullivan* did refer to the *Fulminante* dichotomy as "[a]nother mode of analysis [that] leads to the same conclusion that harmless error analysis does not apply[.]" *Id.* (emphasis added). The Court stated that denial of a jury verdict of guilt beyond a reasonable doubt was a "structural error," "the jury guarantee being a 'basic protection [ ]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function." *Id.* at 281, 113 S.Ct. 2078 (emphasis added) (quoting *Rose,* 478 U.S. at 577, 106 S.Ct. 3101). Thus, the opinion acknowledged that it was applying more than just the *Fulminante* approach when it referred to *Fulminante* as "another mode of analysis," and focused on the nature of the constitutional guarantee affected, the right to trial by jury. *Id.* (citing *Rose,* 478 U.S. at 577, 106 S.Ct. 3101). Hence, *Sullivan* emphasized the nature of the constitutional right, rather than the categorization exclusively set forth in *Fulminante.*[7]

*Sullivan* in effect confirmed the dissent's position in *Fulminante,* written two years before. The dissent in *Fulminante* predicted that under the majority's approach, the "omission of a reasonable doubt instruction" would constitute trial error, but maintained that such an omission "distorts the very structure of trial because it creates the risk that the jury will convict the defendant even if the State has not met its required burden of proof." *Fulminante,* 499 U.S. at 291, 111 S.Ct. 1246 (White, J., dissenting). This statement by Justice White would prove prescient. As discussed *supra,* in *Sullivan,* the United States Supreme Court subsequently held that a defective reasonable doubt jury instruction could never constitute harmless error. 508 U.S. at 279–80, 113 S.Ct. 2078. Even Chief Justice Rehnquist,

who authored the majority opinion in Part II of *Fulminante* that established the trial and structural dichotomy, concurred in *Sullivan,* concluding that he "accept[ed] the Court's conclusion that a constitutionally deficient reasonable doubt instruction is a breed apart from many other instructional errors that we have held are amenable to harmless error analysis." *Id.* at 284, 113 S.Ct. 2078 (Rehnquist, C.J., concurring).

The reasoning of the Court in *United States v. Gonzalez–Lopez,* 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), cited by the majority, also focused on the nature of the right violated. In that case, the Government did not dispute that the District Court erroneously deprived the respondent of his counsel of choice, but argued that "the [Sixth Amendment] violation is not 'complete' unless the defendant can show that substitute counsel was ineffective within the meaning of *Strickland v. Washington,* 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984)—*i.e.,* that substitute counsel's performance was deficient and the defendant was prejudiced by it[,]" or in the alternative, that the defendant was prejudiced under *Strickland* by the denial of his counsel of choice even if the substitute counsel's performance was not constitutionally deficient. *Gonzalez–Lopez,* 548 U.S. at 144–45, 126 S.Ct. 2557.

In addressing the government's contention, Justice Scalia, writing for the majority, stated that, "[t]o be sure, the right to counsel of choice 'is circumscribed in several important respects.' " *Id.* at 144, 126 S.Ct. 2557 (quoting *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). Assuming the "wrongful denial of counsel of choice," however, an element of the Sixth Amendment right to counsel "is the right of a defendant who does not require appointed counsel to choose who will represent him." *Id.* at 144, 126 S.Ct. 2557 (citing *Wheat,* 486 U.S. at 159, 108 S.Ct. 1692) (citation omitted).

The majority rejected the Government's position that the Sixth Amendment right to counsel of choice can be disregarded so long as the trial is "on the whole, fair." *Id.* at

---

7. As noted, lower courts have had trouble applying the *Fulminante* dichotomy. *See* McCord, *su-* *pra,* at 1429–1454.

145, 126 S.Ct. 2557. Instead, the right to counsel of choice "commands, not that the trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 146, 126 S.Ct. 2557. In the majority's view, the Constitution defines the basic elements of a fair trial, and if a defendant is wrongfully deprived of these rights, "[n]o additional showing of prejudice is required to make the violation 'complete.' " *Id.* According to the Court, "[w]here the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Id.* at 148, 126 S.Ct. 2557 (emphases added). This appears to resolve in the negative the issue of whether there was a need for harmless error review, by focusing on the nature of the right rather than on whether the error was "structural" in nature.

Justice Scalia then concluded in brief that the erroneous deprivation of the right to counsel of choice "unquestionably qualifies as 'structural error.' " *Id.* at 150, 126 S.Ct. 2557. Although he clearly categorized the error in accordance with the dichotomy established by the *Fulminante* majority, it is not clear if this was necessary in light of his earlier conclusion that the defendant need not show prejudice. *See id.* at 148, 126 S.Ct. 2557. In fact, in response to the Government's argu-

ment that ineffective assistance of counsel claims may also "pervade[ ] the entire trial," and yet require a showing of prejudice, Justice Scalia stated, "[b]ut the requirement of showing prejudice in ineffectiveness claims stems from the very definition of the right at issue; it is not a matter of showing that the violation was harmless, but of showing that a violation of the right to effective representation occurred." *Id.* at 150, 126 S.Ct. 2557 (first emphasis added, second emphasis in original). Consequently, although Justice Scalia indicated that his harmlessness analysis was based on the trial and structural error dichotomy, as in *Sullivan,* his reasoning with respect to whether a defendant must show prejudice supports the view that certain constitutional rights,[8] including the right to counsel of choice, are "so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman,* 386 U.S. at 23, 87 S.Ct. 824.

## III.

In any event, the approach taken by Justice White's dissent in *Fulminante* is akin to that adopted by this court in *Bowe* and recognized in *Suka.*[9] Rather than resting on a trial error or structural error analysis, this court should conduct its harmless error analysis in accordance with the approach adopted by the dissenting justices in *Fulminante,*[10]

8. Justice Scalia's majority opinion in *Gonzalez–Lopez* appears to distinguish between rights that are specifically defined in the United States Constitution, including the Sixth Amendment right to counsel of choice, and those that are part of the Constitutional guarantee to a fair trial. *See* 548 U.S. at 146, 126 S.Ct. 2557; *see also* Jeffrey L. Fisher, *Categorical Requirements in Constitutional Criminal Procedure,* 94 Geo. L.J. 1493, 1522–27 (2006) (distinguishing between criminal procedure provisions in the Bill of Rights that "enshrine certain values and leave it to courts to ensure that those values are honored" and those that "choose how certain values are to be protected"). Under our case law, this is not a distinction relevant to the construction of rights under the Hawai'i constitution.

9. It must be noted that "state courts are absolutely free to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution." *Arizona v. Evans,* 514 U.S. 1, 8, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). "If a state court chooses merely to rely on federal

precedents as it would on the precedents of all other jurisdictions, then it need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached." *Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In consonance with *Long,* federal cases are cited in this opinion only for the purpose of guidance as to the issues addressed in this case. The Hawai'i constitution, as opposed to federal law, compels the result reached herein.

10. In the past, this court has not hesitated to adopt the dissents in United States Supreme Court cases when it was believed the dissent was better reasoned than the majority opinion. *See, e.g., State v. Cuntapay,* 104 Hawai'i 109, 85 P.3d 634 (2004) (agreeing with the dissent in *Minnesota v. Carter,* 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)); *see also State v. Kam,* 69 Haw. 483, 748 P.2d 372 (1988)(adopting the reasoning of the dissent in *Pope v. Illinois,* 481

and in comportment with our case law. *See Bowe*, 77 Hawai'i at 59, 881 P.2d at 546.

This court, in determining whether to apply harmless error review to the violation of a particular right, should look at the "nature of the right at issue [as well as] the effect of an error upon trial." *Fulminante*, 499 U.S. at 291, 111 S.Ct. 1246. If a violation of the right would " 'abort[ ] the basic trial process' and 'render[ ]' a trial [or sentence] fundamentally unfair[,]' " *id.* at 292, 111 S.Ct. 1246 (quoting *Rose*, 478 U.S. at 577, 106 S.Ct. 3101), then an infraction of that right cannot be treated as harmless error. *See id.* at 290, 111 S.Ct. 1246. Once such an infraction is established, a criminal defendant thus is not required to show prejudice where the right that was violated protects important values underlying constitutional guarantees, such as the tenet that our system is "accusatorial" and not "inquisitorial," even if the underlying value "may be intangible and unprovable in any particular case." *Id.* at 294–95, 111 S.Ct. 1246.

## IV.

The right to counsel is specifically guaranteed and is an essential component of a fair trial under the Hawai'i constitution. *Cf. State v. Dickson*, 4 Haw.App. 614, 618, 673 P.2d 1036, 1041 (App.1983) (citing *State v. Tarumoto*, 62 Haw. 298, 299 614 P.2d 397, 398 (1980)). Absent a knowing and intelligent waiver thereof, "no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he [or she] was represented by counsel at trial." *Id.* (citing *id.*).

In *State v. Maddagan*, 95 Hawai'i 177, 19 P.3d 1289 (2001), this court confirmed that, " 'it is well settled that article I, section 14 of the Hawai'i constitution parallels the sixth amendment's guarantee of a defendant's right to counsel in criminal cases[,]' " 95 Hawai'i at 179, 19 P.3d at 1291 (quoting *State v. Soto*, 84 Hawai'i 229, 237 n. 8, 933 P.2d 66, 86 n. 8 (1997)) (internal quotation marks and brackets omitted) (citations omitted).[11] *Maddagan* distinguishes between the right to counsel of choice with respect to appointed counsel and private counsel. "Where a defendant is indigent, defendant's right to counsel of his or her choice is subject to some statutory and practical constraints." *Id.* at 180 n. 3, 19 P.3d at 1292 n. 3.[12] On the other hand, *Maddagan* stated that "[o]n independent state constitutional grounds, we also recognize that the right to counsel in article I, section 14 of the Hawai'i constitution encompasses a right to privately retained counsel of choice." *Id.* at 180, 19 P.3d at 1292 (emphasis added).

Although this court's opinion in *Maddagan* states that " 'the right to counsel of choice is qualified, and can be outweighed by countervailing governmental interests[,]' " *id.* (quoting *United States v. Monsanto*, 836 F.2d 74, 80 (2d Cir.1987) (citation omitted)),[13] such considerations do not pertain to the choice of

U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987)); *see also State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971) (adopting the dissent in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)).

11. The Sixth Amendment of the United States Constitution has been interpreted by the United States Supreme Court to encompass "the right of a defendant who does not require appointed counsel to choose who will represent him." *Gonzalez–Lopez*, 548 U.S. at 144, 126 S.Ct. 2557 (citing *Wheat*, 486 U.S. at 159, 108 S.Ct. 1692); *see also Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). " '[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.' " *Id.* (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989)).

12. In Hawai'i, an indigent defendant charged with a crime for which imprisonment is authorized has the right to the assistance of a public defender or court-appointed counsel. Haw. Const. art. I, § 14; HRS § 802–1 (1993); *State v. Char*, 80 Hawai'i 262, 267, 909 P.2d 590, 595 (App.1995).

13. *Maddagan* also stated, "[a] finding of good cause for substitution of counsel is ordinarily required for substitution of appointed counsel." 95 Hawai'i at 180 n. 3, 19 P.3d at 1292 n. 3.

counsel. Once it is established that the right to retained counsel of choice is wrongfully denied, a defendant need not show prejudice or prove the underlying value of such a choice. In that circumstance, the denial of substitution of counsel will violate the article I, section 14 right to privately retained counsel of choice in the Hawai'i constitution and cannot be harmless.[14]

---

**14.** Such a determination does not rest on considerations pertaining to continuances, effectiveness of counsel, *see Gonzalez–Lopez*, 548 U.S. at 148, 126 S.Ct. 2557, or the overall fairness of trial, *see id.* at 146, 126 S.Ct. 2557, but on the violation of the guarantee itself.