# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 3, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP331**

**STATE OF WISCONSIN**

Cir. Ct. No. 2001CF1911

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

   V.

ALBERT R. MOSS,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Albert R. Moss, *pro se*, appeals from an order denying his WIS. STAT. § 974.06 (2017-18)[1] motion regarding his conviction for felony murder.  Moss argues that his request for a second continuance during his jury trial was improperly denied, and that he was denied substitution of counsel as a result.

¶2      Additionally, Moss raises a claim of ineffective assistance of counsel relating to two issues.  First, he argues that the prosecutor improperly vouched for his co-actor's credibility, and that his trial counsel was ineffective for failing to object.  His second issue relates to an instruction by the trial court[2] that the parties had stipulated to the qualifications of the expert testifying about the victim's cause of death.  Moss asserts that the instruction was improper in that it instructed the jury that the causation element of felony murder was proven, and that his trial counsel was ineffective for not objecting to that as well.

¶3      The postconviction court[3] rejected Moss's arguments.  We affirm.

## BACKGROUND

¶4      Moss was convicted of felony murder[4] in February 2002.  Moss had

---

[1]  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  The Honorable John DiMotto presided over the jury trial and sentenced Moss.  We refer to Judge DiMotto as the trial court.

[3]  The Honorable Joseph R. Wall decided Moss's postconviction motion, as a successor to Judge DiMotto's calendar.  We refer to Judge Wall as the postconviction court.

[4]  Prior to trial, the State moved to amend the information to add a charge of felon in possession of a firearm; that motion was granted by the trial court in October 2001.  Moss pled guilty to that charge in February 2002.  The conviction on that charge is not at issue in this appeal.

been arrested and charged in the shooting death of Rhonny Glover, Sr., during an armed robbery of Glover's barber shop in April 2001. Glover's son, who had seen two suspects enter the barber shop but fled before the shooting, identified Moss and stated that Moss had pulled out a gun prior to entering the shop.

¶5 A trial was scheduled for October 8, 2001. Attorney Allen Schatz had been appointed to represent Moss, and had appeared on Moss's behalf since the preliminary hearing that was held in July 2001. However, at the final pretrial hearing held on October 2, 2001, Moss indicated that he wanted to have Attorney Schatz discharged and new counsel appointed. The trial court denied the motion. The court noted that based on the record, the relationship between Moss and Attorney Schatz had been "apparently good until just very recently," which the court attributed to a possible competency issue[5] as well as to Moss "potentially getting cold feet" about going to trial, although Attorney Schatz stated that Moss's intention was not to delay the trial.

¶6 On the first day of the trial, Moss renewed his motion to discharge Attorney Schatz, explaining—through the use of multiple and repeated expletives— why he wished to have Attorney Schatz discharged. Initially, the trial court again denied Moss's request; however, because Moss's trial had to be delayed due to another jury trial scheduled in the trial court that day, the court ultimately granted Moss's motion to discharge Attorney Schatz.

¶7 Attorney Douglas Bihler was subsequently appointed to represent Moss, and the jury trial was rescheduled for February 4, 2002. The trial court advised Moss that it hoped his relationship with Attorney Bihler was "better" than

---

[5] A competency hearing was held on October 5, 2001, at which time the trial court found that Moss was competent to stand trial.

his relationship with Attorney Schatz, because Attorney Bihler is "going to be your lawyer … [u]nless, of course, you hire your own lawyer."

¶8      At the final pretrial hearing on January 25, 2002, Attorney Bihler informed the trial court that he had just been advised the night before that Moss intended to hire Attorney Peter Kovac.  The court acknowledged Moss's right to have counsel of his choice, but stated that if Attorney Kovac was retained, he would have to be prepared to try the case on its scheduled date of February 4, 2002.

¶9      At a pretrial conference held on January 31, 2002, Attorney Kovac attended the hearing along with Attorney Bihler, who was still counsel of record for Moss.  Attorney Kovac indicated that he could be prepared to try the case on February 4, 2002.  However, he stated that he believed the matter should be resolved short of trial, but that would likely not be accomplished in such a short amount of time; thus, he would request an adjournment.  The State indicated that it would object to an adjournment, and the trial court agreed that because the case had "been in the system a while," it was "too old" to adjourn.  Additionally, both the State and Attorney Bihler stated that they were prepared to proceed to trial on February 4.  Therefore, the court advised Attorney Kovac that if he wanted to substitute in on the case on February 4 and was prepared to try it, the court would allow him to do that.  However, the court maintained that the matter was either "going to trial on [February 4] or it will be resolved on [February 4]."

¶10     The matter proceeded to trial on February 4, 2002, with Attorney Bihler representing Moss.

¶11     As relevant to this appeal, one of the State's witnesses was Dr. K. Alan Stormo, a forensic pathologist employed by the Milwaukee County Medical Examiner's Office.  Dr. Stormo, along with another pathologist who was

no longer working at Milwaukee County at the time of Moss's trial, conducted the autopsy of Glover. The trial court advised the jury that the parties had entered into a stipulation that Dr. Stormo "may be allowed to render expert testimony in his field of expertise … and most specifically in this case with respect to the issue of cause of death." Dr. Stormo then opined that Glover had died as a result of a gunshot wound that had hit his aorta.

¶12 Also relevant to this appeal is the testimony of Fabeon Spivey, Moss's co-actor in this crime. At the time of Moss's trial, Spivey had already pled guilty to felony murder. As part of Spivey's plea agreement, the State had agreed to reduce its recommended range of incarceration at Spivey's sentencing in return for Spivey's "truthful testimony" against Moss.

¶13 When Spivey took the stand at Moss's trial, he was very reluctant to testify, which led to the trial court having to take a recess—twice—so that Spivey could consult with his attorney. After the first recess, the State asked Spivey if after his discussion with his attorney he was "ready to testify now … [t]ruthfully?" Spivey indicated that he was, but shortly thereafter he failed to continue answering the State's questions, and the court had to take the second recess.

¶14 During that second recess, out of the presence of the jury, the State advised the trial court—and reminded Spivey—that his plea agreement required that he testify truthfully at Moss's trial, and that his failure to do so would be "a material and substantial breach of the plea agreement." Spivey then provided testimony that he and Moss had gone to the barber shop with the intent to rob it. He stated that he had seen Moss pull a gun outside the shop, but that he had not seen Moss point the gun at Glover. The State impeached Spivey on that testimony, pointing out that in

his statement to police after he was arrested, Spivey said he turned and saw that Moss had shot Glover.

¶15    Moss also testified in his defense.  Moss admitted that he went to the barber shop with the intention of robbing gamblers that he thought were there.  He testified that he entered the barber shop, pulled out his gun, and asked Glover "where the money was."  Moss stated that when he saw no gamblers in the shop, he told Spivey to "find the money."  However, Moss quickly determined that "what [he] came in there for wasn't really there," so he told Spivey "let's go."

¶16    When Moss turned to leave, he felt a "hard jab" in his back; he turned back around and saw Glover with a knife in his hand.  Moss stated that Glover was "posing to strike [him] again" and that he "was in fear for [his] life."  Moss testified that he still had the gun in his hand, and proceeded to shoot Glover in self-defense.

¶17    The jury convicted Moss of felony murder.  He was sentenced in March 2002 to a fifty-year term of imprisonment, bifurcated as forty years of initial confinement followed by ten years of extended supervision.[6]

¶18    Moss then filed the postconviction motion underlying this appeal in December 2018.  In his motion, Moss contended that the trial court erroneously exercised its discretion[7] in denying a continuance just prior to the scheduled trial

---

[6] The trial court also sentenced Moss to a concurrent term of five years, bifurcated as two years of initial confinement followed by three years of extended supervision, for his conviction for being a felon in possession of a firearm.

[7] In his motion, Moss used the term "abuse of discretion" which has been replaced with the phrase "erroneous exercise of discretion" to describe alleged errors of the trial court in making discretionary decisions.  *See City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 423, 491 N.W.2d 484 (1992).

date of February 4, 2002, which in turn kept him from proceeding with his counsel of choice, Attorney Kovac. Moss further argued that the prosecutor had improperly vouched for the truthfulness of Spivey's testimony. Additionally, Moss asserted that the trial court's instruction to the jury regarding the parties' stipulation to Dr. Stormo's qualifications as an expert was improper, and that his trial counsel was ineffective for failing to object to that instruction.[8]

¶19 The postconviction court denied Moss's motion. The court noted that Moss's claim of erroneous exercise of discretion cannot be raised in a WIS. STAT. § 974.06 motion, but that in any event, the trial court had good cause for not adjourning the trial. The court also found that the prosecutor's comments regarding Spivey's testimony, when taken in context, did not constitute improper vouching, and therefore Moss's trial counsel was not ineffective for not objecting.

¶20 Finally, the postconviction court rejected Moss's argument that the trial court's instruction relating to Dr. Stormo's testimony was improper. Rather, the postconviction court found that there was "plainly no error" in that instruction, and thus there was "no cause for trial counsel to raise a meritless objection."

¶21 This appeal follows.

**DISCUSSION**

1. *The trial court did not erroneously exercise its discretion in denying Moss a continuance just before trial, nor did it deny Moss substitution of counsel.*

---

[8] Moss also argued in his postconviction motion that the term of initial confinement imposed by the trial court was excessive. The postconviction court agreed and commuted the term to thirty-seven years and six months.

¶22    Moss first argues that the trial court erroneously exercised its discretion in denying his request for a continuance, which was related to his desire to retain new counsel. As noted above, the postconviction court held that his argument is not properly brought under the WIS. STAT. § 974.06 rubric, as these motions are limited to constitutional and jurisdictional matters. *See* ***Cresci v. State***, 89 Wis. 2d 495, 505, 278 N.W.2d 850 (1979). Nevertheless, the postconviction court addressed this issue on the merits as well, and rejected Moss's claim.

¶23    In its response brief on appeal, the State, while acknowledging the postconviction court's initial determination, stated that it chose not to "advance [that] rationale" on appeal, but rather would address the issue on the merits. We also choose to address the merits of this issue, particularly in light of the fact that Moss incorporated his constitutional right to counsel into his argument.

¶24    "[T]he decision to grant a continuance is one committed to the trial court's discretion, which we will reverse only if that discretion has been erroneously exercised." ***State v. Oswald***, 2000 WI App 3, ¶31, 232 Wis. 2d 103, 606 N.W.2d 238. Likewise, decisions regarding the substitution of counsel are also left to the sound discretion of the trial court. ***State v. Prineas***, 2009 WI App 28, ¶13, 316 Wis. 2d 414, 766 N.W.2d 206.

¶25    We will uphold the discretionary decisions of the trial court if it "logically interpreted the facts, applied the proper legal standard to the relevant facts, and used a rational process to reach a reasonable conclusion." ***State v. Darby***, 2009 WI App 50, ¶28, 317 Wis. 2d 478, 766 N.W.2d 770.

¶26    When a defendant requests a continuance for purposes of making a substitution of counsel, the trial court must "balance [the] defendant's constitutional right to counsel of choice … against the societal interest in prompt and efficient

8

administration of justice." *Id.*, ¶30 (citation omitted). The trial court may consider the following factors in making this determination:

> [T]he length of delay requested; whether there is competent counsel presently available to try the case; whether other continuances have been requested and received by the defendant; the convenience or inconvenience to the parties, witnesses and the court; whether the delay seems to be for legitimate reasons or whether its purpose is dilatory.

*Id.* (citation omitted; brackets in *Darby*).

¶27    The record demonstrates that the trial court considered these factors in denying a continuance for Moss's trial. While a specific length of time for the continuance was not requested, Attorney Kovac indicated that he believed the matter could be resolved short of trial, but that likely would not be achieved by the scheduled trial date. On the other hand, Attorney Bihler was still Moss's counsel of record and he was prepared to try the case on the scheduled date.

¶28    The trial court further noted that Attorney Bihler was Moss's second lawyer on this case—a substitution that had occurred when the trial was rescheduled from October 2001. Indeed, the court observed that the case was "old" at that point. Furthermore, Moss's request for the substitution of Attorney Kovac for Attorney Bihler came just a few days before the trial was to begin. The State was prepared for trial, and indicated that it would object to an adjournment. Thus, the application of the *Darby* factors to the facts of this case support the court's discretionary decision to deny the continuance. *See id.*, ¶¶28, 30.

¶29    The second part of Moss's argument—that the trial court denied him substitution of counsel—fails as well, because the record plainly indicates that the trial court did *not* deny that request. Rather, the request was granted, with the caveat that upon substitution, Attorney Kovac had to be prepared to resolve the case on the

9

scheduled trial date, which Attorney Kovac indicated was feasible. In fact, the trial court had previously observed that Moss had the right to hire his own attorney, when Attorney Bihler took over Moss's case from Attorney Schatz.

¶30 In sum, the trial court stated that it "[d]oesn't matter to [the court] whether it's Mr. Bihler who tries it or Mr. Kovac … But justice delayed is justice denied in my estimation." We conclude that the trial court's decision shows that it properly considered and balanced Moss's right to his counsel of choice with the need for efficient judicial administration. *See id.*, ¶30. Therefore, the court did not erroneously exercise its discretion. *See id.*, ¶28.

> *2. Moss's trial counsel was not ineffective for failing to object to either the prosecutor's question to Spivey or to the trial court's instruction to the jury regarding the stipulation relating to Dr. Stormo's qualifications as an expert.*

¶31 Moss raises two issues for which he contends his trial counsel was ineffective: (1) failing to object to what Moss contends was improper vouching by the prosecutor regarding Spivey's testimony; and (2) failing to object to an instruction by the trial court that Moss alleges was improper because it instructed the jury that the causation element of felony murder was proven.

¶32 To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *State v. Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" *State*

*v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

### A. The prosecutor was not vouching for Spivey.

¶33    First, we address Moss's argument that the prosecutor improperly vouched for Spivey's testimony.  Shortly after Spivey took the stand, he stopped answering the prosecutor's questions during her direct examination; the trial court took a recess to allow Spivey to consult with his attorney.  After the recess, when the jury had returned, the prosecutor asked Spivey if he had a chance to consult with his attorney, and if he was "ready to testify now … [t]ruthfully?"

¶34    Improper vouching "occurs when a prosecutor expresses [his or] her personal opinion about the truthfulness of a witness or when [he or] she implies that facts not before the jury lend a witness credibility." *United States v. Cornett*, 232 F.3d 570, 575 (7th Cir. 2000).  Here, the record clearly demonstrates that the prosecutor was not presenting a personal opinion regarding Spivey's testimony.  Rather, she was referring to the terms of the earlier plea agreement between Spivey and the State.  This was further established after the first recess:  the prosecutor had barely resumed her direct examination when Spivey again stopped answering her questions.  That resulted in the second recess, during which the trial court asked the prosecutor about Spivey's plea agreement—specifically, that the negotiations had included Spivey's agreement to testify truthfully against Moss.

¶35    This exchange confirms that the prosecutor's question about the truthfulness of Spivey's testimony was simply a "question[] and answer[] [that] disclosed an agreement between the [S]tate and the witness." *See State v. Kaster*,

11

148 Wis. 2d 789, 800, 436 N.W.2d 891 (Ct. App. 1989). Thus, her statement was "nothing more than a disclosure of facts affecting [Spivey's] credibility," not improper vouching. *See id.* Therefore, Moss's trial counsel was not ineffective for failing to object to the prosecutor's question. *See State v. Cameron*, 2016 WI App 54, ¶27, 370 Wis. 2d 661, 885 N.W.2d 611 ("It is not deficient performance for counsel not to make a pointless objection.").

*B. The trial court's instruction to the jury regarding the parties' stipulation to Dr. Stormo's qualifications as an expert was not improper.*

¶36 Dr. Stormo, one of the forensic pathologists who performed the autopsy on Glover, was called by the State to testify as to Glover's cause of death. The parties had previously stipulated that Dr. Stormo could testify as an expert in this regard; the trial court thus informed the jury of the stipulation as it related to Dr. Stormo's testimony, "specifically … with respect to the issue of cause of death."

¶37 Moss asserts that because this instruction noted that Dr. Stormo would be testifying as to cause of death—an element of felony murder—the instruction was improper because it "clearly instruct[ed] the jury" that Glover's cause of death was "conclusively proven." On the contrary, that is clearly *not* the case. Rather, the trial court simply advised the jury that Dr. Stormo was to be considered an expert on this matter. Additionally, in its full instruction to the jury prior to deliberations, the court explained that as an expert, Dr. Stormo was allowed to give an opinion on the cause of death, but that the jury was not bound by that opinion, and that it still needed to determine the credibility of the witness and the weight that should be given to his testimony. Therefore, Moss's trial counsel was again not deficient for

failing to make a pointless objection to the trial court's proper instruction regarding the stipulation. *See **id.***

¶38 In short, Moss's arguments all fail. Accordingly, we affirm the order of the postconviction court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.